Damion D. D. Robinson, Cal. Bar No. 262573
  dr@robinsonmarkevitch.com
David Markevitch, Cal. Bar No. 256163
  dm@robinsonmarkevitch.com
Jimmie Davis Parker Cal. Bar No. 252023
  jdp@robinsonmarkevitch.com
Robinson Markevitch & Parker LLP
8430 Santa Monica Blvd., Suite 200
West Hollywood, CA 90069
Tel. (213) 757-7778

Raymond P. Boucher, Cal. Bar No. 115364
  ray@boucher.la
Shehnaz M. Bhujwala, Cal. Bar No. 223484
  bhujwala@boucher.la
BOUCHER LLP
21600 W Oxnard Street Suite 600
Woodland Hills, CA 91367
Tel. (818) 340-5400

Attorneys for Plaintiffs JANE DOES 1–16,
individually and on behalf of all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOES 1–16, individually and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> vs. <br><br> Jaime S. Schwartz, MD, an individual, et al, <br><br> Defendants. | Case No.: 2:25-CV-00898-GW-SSC <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO APPOINT INTERIM CLASS COUNSEL** <br><br> Date:    June 26, 2025 <br> Time:    8:30 a.m. <br> Courtroom 9D, 9th Floor <br><br> [Filed concurrently: <br> 1. Supplemental Declaration of Damion Robinson] |

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................1

II.    ARGUMENT................................................................3

       A.    Boucher/RMP Is Exceedingly Qualified to Represent the Class ...............................................................3

             1.    Boucher/RMP Has Done Far More Work on Behalf of the Class than the Borrelli/HAE Group. ....................3

             2.    Boucher/RMP Have Extensive Class-Action Experience, Including Data Breach Experience. ....................5

             3.    Boucher/RMP Also Has Significant Data Breach Experience.........................................................6

             4.    Boucher/RMP Are Diverse Firms and Have Adequate Resources to Prosecute this Litigation Effectively...................7

       B.    Boucher/RMP Filed First and Are the Only Local Firms...................9

       C.    Borrelli/HAE's Mudslinging Is Irrelevant and Inaccurate. ...............10

             1.    Boucher/RMP Selected an Appropriate Number of Plaintiffs..................................................10

             2.    Boucher/RMP Attempted to Negotiate Joint Appointment and Led the Efforts to Streamline the Appointment Process when Negotiations Failed.....................12

             3.    Borrelli/HAE's Reliance on a 32-year-old Disciplinary Matter Is Unprofessional and Irrelevant. ...........14

       D.    Ms. Borrelli Is Not Eligible to Practice in this District and Has Repeatedly Violated the Court's *Pro Hac Vice* Rules................16

       E.    Liaison Counsel Is Unnecessary and HAE Is Not Suited to Act as Liaison Counsel in Any Event. ...............................18

III.   CONCLUSION ...........................................................20

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021) ............................................................19

*Benanav v. Healthy Paws Pet Ins. LLC*,
   2023 WL 5227702 (W.D. Wash. Aug. 15, 2023) ..................................5, 11,

*Bolooki v. Honda Motor Co.*,
   2023 WL 2627014............................................................................................8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990).......................................................................19

*Carrabba v. Randalls Food Mkts., Inc.*,
   191 F. Supp. 2d 815 (N.D. Tex. 2002)............................................................10

*Casey v. Monte Nido & Affiliates Hldgs., LLC*,
   No. 1:24-cv-23119, 2024 WL 3949404 (S.D. Fla. Aug. 27, 2024) .................13

*Easton v. Bailey*,
   No. CV 12- 01716 DMG, 2013 WL 12323847 (C.D. Cal. Jan. 4, 2013) ...........9

*Hicks v. L'Oréal U.S.A., Inc.*,
   No. 22 Civ. 1989, 2024 WL 4252498 (S.D.N.Y. Sept. 19, 2024) ...................12

*Hoffower v. Seamless Contacts Inc.*,
   736 F. Supp. 3d 605 (N.D. Ill. 2024)..............................................................11

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
   No. 2:23-cv-01447, 2024 WL 2959279 (D. Nev. June 12, 2024) ...............9, 11

*In re Disciplinary Action Boucher*,
   850 F.2d 597 (9th Cir. 1988)..........................................................................15

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
   No. 1:21-cv-269, 2022 WL 1494378 (E.D. Va. May 10, 2022)........................4

*In re Lenovo Adware Litig.*,
   No. 15-md-02624, 2015 WL 10890657 (N.D. Cal. July 27, 2015) ..................11

*In re Regional Care Data Security Incident Litig.*,
   No. 4:24CV3236, 2025 WL 675056 (D. Neb. Mar. 3, 2025) ...........................18

*In re Robinhood Outage Litig.*,
   No. 20-cv-01626-JD, 2020 WL 7330596 (N.D. Cal. July 14, 2020).................8

*In re Stubhub Refund Litig.*,
   No. 20-md-2951-HSG, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020)..............8

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

*In re U.S. Bioscience Sec. Litig.*,
    155 F.R.D. 116 (E.D. Pa. 1994) ..................................................................10

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982)........................................................................19

*Rensel v. Fluidmaster*,
    No. SA CV 14–0648 PA, 2014 WL 6466853 (C.D. Cal. Nov. 12, 2014).........16

*Rensel v. Fluidmaster*,
    MDL No. 2575, 2015 WL 2453034 (N.D. Ill. May 21, 2025) ..........................16

*Uharriet v. Mylife.com, Inc.*,
    No. 21-cv-08229-VC, 2022 WL 3098072 (N.D. Cal. Aug. 4, 2022) ................5

*Weaver v. Champion Petfoods USA Inc.*,
    No. 18-CV-1996, 2019 WL 7370374 (E.D. Wis. Dec. 31, 2019); ...................16

*Wilson v. Ancesty.com LLC*,
    No. 2:22-cv-861, 2024 WL 3992356 (S.D. Ohio Aug. 27, 2024) ....................11

*Zeiger v. WellPet LLC*,
    No. 3:17-cv-04056-WHO, 2020 WL 1245370 (N.D. Cal. Mar. 16, 2020) ......16

*Zeiger v. WellPet LLC*,
    No. 3:17-cv-04056-WHO, 2020 WL 9160842 (N.D. Cal. Jan. 22, 2020)..........5

**Rules**

Fed. R. Civ. P. 23 ...........................................................................1, 9, 10, 20

Local Rule 83-2.1.3.2 ...........................................................................17

Local Rule 83-2.1.3.4 ...........................................................................17

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

# I.    INTRODUCTION

The established Rule 23 factors – *i.e.*, work done in the case, class-action experience, knowledge of applicable law, and resources – strongly favor appointing Boucher LLP ("Boucher") and Robinson Markevitch & Parker LLP ("RMP"). Boucher/RMP has conducted a comprehensive factual investigation, engaged a team of highly qualified experts and consultants, filed suit a month before the other two law firms, Strauss Borrelli PLLC ("Borrelli") and Haeggquist & Eck, LLP ("HAE"), and prepared by far the most comprehensive pleadings in any of the cases. Boucher/RMP also have decades more experience and a track record of success in resolving cases many times larger and more complex than those handled by the other firms. They also have significant data breach experience, as well as the resources to effectively and efficiently prosecute this case. Appointing Boucher/RMP as lead counsel is in the best interests of the putative class.

Because the Rule 23 factors strongly support Boucher/RMP, Borrelli/HAE change the subject, arguing that they should be appointed largely because both lead attorneys are women. No court has ever sanctioned this sort of sex-based leadership determination. While ***diversity*** is sometimes considered a relevant factor, having an all-woman team does not make Borrelli/HAE more diverse.  Boucher/RMP propose a more diverse leadership group. Both firms have diverse attorneys of different genders, races, and professional backgrounds. They also propose as co-lead counsel Shehnaz Bhujwala, a female litigator with highly relevant experience and credentials. Further, while Borrelli/HAE highlight the need for "trauma-informed" representation, they ignore that Boucher has more extensive experience in this area as well, having spent decades representing survivors of clergy/childhood sexual abuse in some of the most sensitive and high-profile cases in history.

Making matters worse, Borrelli/HAE have proposed lead counsel who is not eligible to practice in this Court and liaison counsel who has not been involved in this case since its inception. The Court has repeatedly and properly stricken Ms. Borrell's

- 1 -

*pro hac vice* applications. It did so the first time because she tried to sidestep admission requirements by having a junior associate in her Chicago office sponsor her application (using a fake California office address). It rejected her second application because she regularly practices in California without being licensed here. While Borrelli/HAE highlight HAE's "satellite office" in this district, according to the State Bar, every attorney in that firm, including Ms. Haeggquist, is based in San Diego. In addition to having had no meaningful involvement in this case, Ms. Haeggquist has only appeared in two other cases in this District in the past five years—far fewer than Ms. Borrelli. There is no basis to appoint liaison counsel who is uninvolved in the case and inexperienced in this Court. Appointing two out-of-town firms with no connection to this District is not in the best interests of the putative class.

The remainder of the Opposition consists of a series of irresponsible swipes at the Boucher/RMP leadership group based on factual assertions that Borrelli/HAE know—or certainly should know—to be false. Based on their extensive experience, Boucher/RMP made the strategic decision to select a diverse group of lead plaintiffs based on the unique facts and circumstances. Due to variations within the class – *e.g.*, individuals whose data is posted online versus those who have not been posted – and factual uncertainty surrounding the full scope of the breaches they selected a representative cross-section of the class to serve as representatives. This reflects a prudent and pragmatic approach in a sensitive and factually complex case.

Boucher/RMP have also been cooperative with other counsel on both sides of the case. RMP spent weeks attempting to negotiate an inclusive leadership structure. It bowed out when it became clear that Borrelli and HAE were more interested in reaching a fee- and cost-sharing arrangement than in implementing workable leadership for the benefit of the class. Boucher/RMP then negotiated stipulations to relate and consolidate the cases and streamline appointment briefing so that each firm could be heard in a timely and efficient manner. While Borrelli attempts to take credit for this work, the record makes clear that Boucher/RMP drafted and filed both

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

- 2 -

stipulations despite significant resistance by Borrelli/HAE. The fact that Boucher/RMP did not accede to Borrelli's my-way-or-the-highway approach is not evidence of a lack of cooperation, at least not on the part of Boucher/RMP.

Finally, Borrelli/HAE dredge up Mr. Boucher's 32-year-old disciplinary matter—from decades before any of the Borrelli/HAE attorneys were licensed to practice—to advocate against his appointment. They omit the fact that the State Bar stayed execution of the suspension, in 1992, based on mitigating factors. They also incorrectly cite a related 1988 proceeding, more than 36 years ago, in which the Ninth Circuit reversed a suspension arising from the same matter, attributing the issue to Mr. Boucher's relative inexperience as a new lawyer being thrust into a complex federal lawsuit without help. Contrary to the false assertions in the Opposition, Mr. Boucher was not suspended from practice by the Ninth Circuit. In the ensuing 36 years, he has had an extremely distinguished career and is by far the most accomplished attorney of any seeking appointment.

None of Borrelli/HAE's arguments change the basic facts.  The Boucher/RMP team is more qualified, more experienced, and has done far more work than the other firms, in a collaborative manner. They also have earned the trust of more plaintiffs willing to step forward as representatives—as opposed to people who have "contacted" the other firms in response to online attorney advertising and active solicitation. They are also both based in this District and filed suit first. Under these facts, the decision of who to appoint as lead counsel is clear.

## II.    ARGUMENT

### A.    Boucher/RMP Is Exceedingly Qualified to Represent the Class

#### 1.    Boucher/RMP Has Done Far More Work on Behalf of the Class than the Borrelli/HAE Group.

There is no serious dispute that the Boucher/RMP team has done substantially more work than the other two firms, which filed "copycat" cases weeks later. This work is laid out in detail in Boucher/RMP's moving papers. It included a

- 3 -

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

comprehensive public source investigation, engaging a data breach consultant with detailed knowledge of the breaches, engaging a cybersecurity expert, working with a forensic firm to preserve evidence, and interviewing two dozen victims. Robinson Decl. (ECF No. 34-2) at ¶¶ 3-4.[1] The fruits of this investigation are reflected in the pleadings, which are far more robust and accurate than those in the later cases. Indeed, HAE's complaint was largely a verbatim copy of RMP's Complaint. *See In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269, 2022 WL 1494378, at *2 (E.D. Va. May 10, 2022) (noting "quality of the pleadings" as a factor).

By contrast, Ms. Borrelli identifies no meaningful work that she has done other than signing up two plaintiffs and filing two (largely boilerplate) complaints. Although she claims to have done "significant work," she offers generic conclusions, such as "investigating the facts," "researching legal claims," "drafting initial pleadings," and "interviewing numerous consumers." Borrelli Decl. (ECF No. 45) ¶¶ 16-17. Borrelli concedes that the firm did not even *start* investigating until after Dr. Schwartz publicly disclosed the data breach—a month after RMP had already conducted its initial investigation and filed suit. Opp. at 13:3-4. The primary work of Borrelli appears to be its efforts to insert itself into the leadership structure in this first-filed case, which has no benefit to the class and benefits only Borrelli. This factor weighs heavily in favor of Boucher/RMP.

There is also a serious question of whether Borrelli, a relatively new firm, is oversubscribed by the multitude of putative class actions they have filed recently. Ms. Borrelli has approximately a dozen putative class actions pending in this Court and the Northern District of California, another seven in her home district, the Northern District of Illinois, and the Opposition lists at least five more. *See* Robinson Supp.

---

[1] In contrast, HAE claims that their office has been "contacted" by putative class members – presumably due to their social media campaign – but has said nothing about any interviews conducted or information gleaned from these victims. Having spent dozens of hours interviewing and counseling victims, Boucher/RMP plainly prevail on this factor.

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

- 4 -

Decl., Exs. 1-3; Opp. at pp. 8-9. Having two dozen putative class actions pending raises obvious concerns about how much time and attention Ms. Borrelli can actually devote to leadership here, given these many other commitments. These concerns are compounded by the fact that several courts in cases involving Ms. Borrelli have found that the plaintiffs exhibited a troubling lack of diligence, potentially prejudicing class members. *See*, *e.g.*, *Uharriet v. Mylife.com, Inc.,* No. 21-cv-08229-VC, 2022 WL 3098072 (N.D. Cal. Aug. 4, 2022) (denying last-minute request to vacate all litigation deadlines because counsel "just scheduled a mediation," reminding counsel of the "responsibility to diligently pursue the case on behalf of the absent class members they hope to represent")[2]; *Benanav v. Healthy Paws Pet Ins. LLC*, No. 2:20-cv-00421-LK, 2023 WL 5227702, at *5 (W.D. Wash. Aug. 15, 2023) (denying leave to amend where plaintiffs waited almost three years despite knowing "that they had brought their breach of contract claim against the wrong party"); *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO, 2020 WL 9160842 (N.D. Cal. Jan. 22, 2020) (declining leave where counsel waited nine months, finding no "satisfactory justification for [plaintiff's] lengthy delay" and plaintiff "has failed to show diligence").

### 2. Boucher/RMP Have Extensive Class-Action Experience, Including Data Breach Experience.

Counsel's experience also weighs heavily in favor of Boucher/RMP. There is no dispute that the two firms have vastly more experience in class and complex litigation in terms of years, number of cases, size of cases, and size of outcomes. As Borrelli/HAE concede, Boucher has "a breadth of experience in class action litigation." Opp. at 13 fn. 6.

Boucher has been appointed to leadership positions in dozens of class, mass, and other complex proceedings over the course of 40 years. Mr. Boucher has

---

[2] Within a month of the court denying the requested stay, Ms. Borrelli settled the named plaintiffs' individual claims and abandoned the class claims in the *Uharriet* matter. *See* Robinson Supp. Decl., Ex. 5.

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

participated in landmark impact litigation on behalf of abuse victims and has recovered over $4 billion for deserving plaintiffs. *See* Boucher Decl. (ECF No. 34-1) ¶¶ 7-16 & Exs. 1, 2. The limited experience of Borrelli/HAE does not come close.

While Ms. Borrelli presents her "years of experience litigating complex class actions," every attorney in the Boucher/RMP group has substantially more experience. Opp. at 16:19-20. Mr. Borrelli graduated from law school in 2011. Borrelli Decl. (ECF No. 45) ¶ 9. By that time, Mr. Boucher had been practicing over 25 years, had been named Trial Lawyer of the Decade, had served as President of both the Consumer Attorneys of California and Consumer Attorneys Association of Los Angeles (the state's leading plaintiff bar organizations), had been appointed lead or co-lead counsel in numerous class actions and complex cases, including the landmark Clergy abuse cases, and had secured significant recoveries on behalf of survivors. Boucher Decl., Ex. 2. As of 2011, Ms. Bhujwala had been practicing for nearly a decade, providing representation to childhood abuse survivors and was prosecuting numerous class actions, including privacy class actions involving high-profile wiretappings and illegal recording of confidential calls. *Id.*, Ex. 1. Mr. Robinson had completed a clerkship in this District and had been counsel in cutting-edge class actions at trial and appellate levels. Robinson Decl., ¶¶ 7-8 & Ex. 1.

### 3.    Boucher/RMP Also Has Significant Data Breach Experience.

The Borrelli/HAE team effectively rests their appointment request on Borrelli's experience, including a single, large data breach class action in which Ms. Borrelli served as co-lead counsel. One successful case, however, is not a basis for appointment. Notably, nearly all of Borrelli's asserted data breach experience apparently stems from a wave of similar cases filed by that firm within the past three years. *See* Opp. at pp. 8-10 (identifying five data breach cases that Borrelli is "currently litigating"; one filed in 2021, and all others filed from 2022 to 2025).

Further, while Borrelli compares this case to other cases involving "sensitive medical information and nude photos of medical patients," Opp. at 9:8-9, it never

- 6 -

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

1   explains why this factual setting is legally relevant. All the claims are California state

2   law tort and statutory claims. None of them turn on whether nude images were

3   exposed. The Boucher/RMP team have been actively practicing in California for

4   between 16 and 40 years. They have vastly more experience with and knowledge of

5   California law. Indeed, Ms. Borrelli identifies only one other California data breach

6   case in her career, *Jane Doe v. SSK Plastic Surgery, Inc.*, Orange County Superior

7   Court, No. 30-2025-01467755, which she filed after these consolidated cases.

8         Boucher/RMP also have extensive data breach experience. The Boucher firm

9   attorneys' experience in data breach and privacy class actions is detailed in Paragraph

10  9 of Mr. Boucher's Declaration and includes leadership roles going back to 2004.

11  These include cases against large corporations and medical groups for breaches

12  involving private information. *See, e.g.*, *In re: Pellicano Cases*, Cal. Super. Ct., Los

13  Angeles Cty, Case No. BC316318 (co-lead counsel in class action against AT&T for

14  its role in Anthony Pellicano wiretapping scandal); *In re Adobe Systems, Inc. Privacy*

15  *Litigation*, N.D. Cal. Case No. 5:13-cv-05226 (appointed to plaintiffs' steering

16  committee in putative data breach class action against Adobe); *Adlouni v. UCLA*

17  *Health Systems Auxiliary*, et al., Cal. Super. Ct., Los Angeles Cty., Lead Case No.

18  BC589243 (appointed liaison counsel in 17 consolidated class actions against UCLA

19  Health); *In Re Anthem, Inc. Data Breach Litigation*, N.D. Cal. Case No. 15-md-

20  02617-LHK (representation of named plaintiff in consolidated class action involving

21  data breach of Anthem, Inc.)

22        In addition to their own experience, Boucher/RMP have also assembled a team

23  of highly qualified experts and consultants.  These include a data breach consultant

24  familiar with the breaches, a forensic IT firm, and a cybersecurity expert. The

25  Boucher/RMP team is well qualified to litigate this matter effectively.

26         **4.    Boucher/RMP Are Diverse Firms and Have Adequate
                 Resources to Prosecute this Litigation Effectively.**

27

28   Borrelli/HAE do not dispute that Boucher/RMP have the staffing and resources

- 7 -

necessary to prosecute this case effectively. Boucher is the largest of any of the firms seeking appointment. RMP adds another five qualified attorneys, including three with significant class action experience. Both firms are committed to zealously pursuing this case on behalf of the class.

While some courts consider diversity a factor in class counsel appointment, this factor does not cut the way Borrelli/HAE suggest. *See In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) (declining to appoint lead counsel without prejudice where all proposed lead counsel, the "executive committee," and liaison counsel were men, and all of the attorneys were "repeat player[s]" in class litigation); *Bolooki v. Honda Motor Co.*, No. 2:22-cv-042525-MCS-SK, 2023 WL 2627014, at *4 (noting that diversity is important where classes are "likely comprised of many thousands of class members of all backgrounds"; noting that no women were proposed to have a leadership role); *In re Stubhub Refund Litig.*, No. 20-md-2951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (noting in passing that counsel had "demonstrated careful attention to creating a diverse team"). The focus has been the need for a *diverse* leadership team – *i.e.*, lawyers with different backgrounds – not one comprised of all women or all men.

The Boucher/RMP team is more diverse—it just is not comprised entirely of women. Both firms employ attorneys of different genders, ethnicities, and personal and professional backgrounds. Of Boucher's 11 attorneys, six are women, including two of four partners, and the firm's attorneys are also diverse in terms of ethnicity and orientation. *See* Boucher Decl., Ex. 1. Mr. Boucher has served on the Board of Directors of the Diversity in Law Foundation. *Id.* Reflecting the firm's commitment to diversity, RMP's two associate attorneys are a woman and a person of color. Robinson Supp. Decl. ¶ 8. Boucher Partner Shehnaz M. Bhujwala, who seeks appointment as co-lead counsel, is a female civil litigator. She also serves as a Trustee for the Los Angeles County Bar Association, where diversity and inclusion in the legal profession is a core value. Boucher Decl., Ex. 1. Borrelli/HAE conveniently

- 8 -

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

ignore these points in their Opposition.

They also ignore that the Boucher/RMP team is well-equipped to provide "trauma-informed" representation. Bocher has represented hundreds of survivors of childhood sexual abuse over many years and has developed a nationwide reputation as a compassionate and client-focused advocate for the rights of survivors, dealing with some of the most traumatic events imaginable. David Markevitch has significant experience staying in daily contact with hundreds of injured plaintiffs in need of support and counseling in mass torts cases. His ability to connect with injured clients of all genders, creeds, and backgrounds is invaluable in helping the vulnerable class members here. Robinson Decl., Ex. 1. Similarly, Mr. Robinson has devoted significant time to representing survivors of domestic and sexual violence *pro bono*.[3]

**B.    Boucher/RMP Filed First and Are the Only Local Firms.**

There is no dispute that the first-to-file factor supports Boucher/RMP. While some courts in other jurisdictions have questioned the importance of this factor, courts in the Ninth Circuit consistently treat it as a "tie breaker" when the other factors do not strongly favor one group over another. *See*, *e.g.*, *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447, 2024 WL 2959279, at *6 (D. Nev. June 12, 2024) (recognizing "significant body of other courts" recognizing first-to-file factor); *Easton v. Bailey*, No. CV 12- 01716 DMG, 2013 WL 12323847, at *1 (C.D. Cal. Jan. 4, 2013) (citations omitted). Even if the explicit Rule 23 factors did not strongly favor Boucher/RMP—and they do—Boucher/RMP filed more than a month earlier than the other firms, reflecting "preparation and commitment to prosecuting the case." *Caesars Ent., Inc.*, 2024 WL 2959279, at *6 (citation omitted).

Moreover, despite the misleading assertions in the Opposition, Boucher and RMP are the only two firms with active offices in this District. While HAE highlights

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

---

[3] *Asylum in America: A High-Stakes Struggle for Border Crossing Kids*, Time Magazine (Oct. 8, 2014): https://time.com/3478351/border-crossing-kids-seek-asylum-in-america/ (last viewed 06/11/2025).

its Los Angeles "satellite office," this appears to be an office of another firm, Ephron & Barenholz.[4] Not a single attorney at HAE, including Ms. Haeggquist, works from this purported "satellite office." All of HAE's lawyers are based in San Diego according to their California State Bar profiles. Robinson Supp. Decl., Ex. 6. Having a mailing address in Los Angeles is a far cry from two firms that actively and successfully litigate complex cases in Los Angeles, including the Central District of California, on a regular basis.

### C.    Borrelli/HAE's Mudslinging Is Irrelevant and Inaccurate.

Unfortunately, much of the Borrelli/HAE brief is devoted to irrelevant attacks on Boucher and RMP. Not only are these *ad hominem* attacks unrelated to the Rule 23 factors and counterproductive, but they are factually false.[5]

#### 1.    Boucher/RMP Selected an Appropriate Number of Plaintiffs.

The Opposition contends that "[f]iling a class action lawsuit with 15 lead plaintiffs underscores Robinson & Boucher's inexperience in class action litigation." Opp. at 15:15-16. This is risible.[6] As Borrelli/HAE concede, Boucher has extensive class action experience—decades more experience than either of the competing firms.

Borrelli/HAE cite no case suggesting that having a significant number of class representatives is a factor weighing against appointment. Instead, having the larger number of plaintiffs is generally considered a factor *in favor* of appointment because it

---

[4] https://www.barenlaw.com/pages/3/index.htm.

[5] Ironically, in negotiating a class counsel briefing process, Ms. Borrelli insisted on having each firm file a short application for appointment without oppositions or replies, allegedly to avoid these types of unprofessional attacks. Unfortunately, the Borrelli/HAE brief is riddled with them.

[6] In support of this argument, Borrelli/HAE cite two district court decisions that have nothing to do with appointment of class counsel. *See Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815, 827 (N.D. Tex. 2002) (ERISA case: declining to grant a *second* attorney fee award from class fund, in part, because class counsel spent hundreds or thousands of hours dealing with issues relating to 35 appointed representatives); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 122 (E.D. Pa. 1994) (securities case: declining to approve incentive awards to 35 class representatives, represented by 34 separate firms).

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

reflects that counsel has garnered support from a larger number of affected parties. *See In re Lenovo Adware Litig.*, No. 15-md-02624, 2015 WL 10890657, at \*2 (N.D. Cal. July 27, 2015); *Caesar's Ent., Inc.*, 2024 WL 2959279, at \*5.

The selection of lead plaintiffs by Boucher/RMP reflects a strategic decision based on the specific facts and circumstances. The group of plaintiffs selected is a cross-section of the class as a whole. In class actions of this type, recovery is often allocated based on the severity of the harm – *e.g.*, smaller recovery for individuals whose data was accessed but not leaked, and a larger recovery for those whose images have been publicly posted. Boucher/RMP have selected plaintiffs that fit within each of the relevant groups, *e.g.*, a representative who has not received a data breach notice, some whose images were posted on the hacker site, and others whose data was accessed and exfiltrated but has not been posted at this time.

Selecting only one or a handful of representatives is risky in a case like this because the complete details of the data breach are not fully known yet and cannot be ascertained until discovery. None of the plaintiff groups can say with certainty at this time what data was stolen relating to which class member. By moving forward with only one or a handful of representatives, Borrelli/HAE are effectively gambling that the facts will bear out their allegations as to the individual plaintiffs. Borrelli is plainly aware of this risk.[7] In another case in which Ms. Borrelli represented the plaintiffs, they urged that it was a "best practice" to "have additional class representatives to protect the interests of absent class members." *Benanav*, 2023 WL 5227702, at \*4; *see*

---

[7] Ms. Borrelli has repeatedly had class action cases undermined where discovery reveals that the class representative does not have a viable individual claim. *See, e.g., Wilson v. Ancesty.com LLC*, No. 2:22-cv-861, 2024 WL 3992356, at \*3-7 (S.D. Ohio Aug. 27, 2024) (granting defense summary judgment and denying certification as moot where discovery revealed that named plaintiff's data was not used in any of the ways alleged in the complaint); *Hoffower v. Seamless Contacts Inc*., 736 F. Supp. 3d 605, 615-616 (N.D. Ill. 2024) (granting summary judgment where plaintiff's information was only accessed by her own counsel); *cf. Benanav*, 2023 WL 5227702, at \*3-4 (denying leave to amend to add a new plaintiff at a late stage of the case, finding that "Plaintiffs have not demonstrated diligence or good cause"; rejecting plaintiffs' arguments as inconsistent with the facts).

*also Hicks v. L'Oréal U.S.A., Inc.*, No. 22 Civ. 1989, 2024 WL 4252498 (S.D.N.Y. Sept. 19, 2024) (putative class action prosecuted by Borrelli with 14 plaintiffs). The same is true here. RMP made the prudent decision not to gamble with the rights of class members, and to wait until the certification stage after initial discovery to select the most viable representatives. This hardly reflects inexperience in class litigation.

Finally, this is not the type of case where the class is or should be uninvolved in decision making. This case arises from an egregious and deeply personal violation of privacy. Class members who want a say in how their rights are vindicated ought to have one. While Borrelli/HAE continually speculate about the wants and needs of the class, they appear to ignore what the victims actually want – *i.e.*, a seat at the table as this case moves forward. The class plaintiffs in this case are actively involved in the Lipedema community, and several of them have acted as spokespeople, coordinating victims to pursue this action and seek assistance from law enforcement. Including them as representative plaintiffs to ensure that they are heard does not suggest a lack of experience, but a commitment to the interests of the class.

### 2.    Boucher/RMP Attempted to Negotiate Joint Appointment and Led the Efforts to Streamline the Appointment Process when Negotiations Failed.

The argument that Boucher/RMP have been uncooperative is not based in reality. RMP spent weeks negotiating in good faith for a joint leadership structure until it became clear that Borrelli/HAE were less interested in workable leadership and more interested in dividing up an eventual fee award. Robinson Supp. Decl. ¶ 9.

These discussions began in late March. By late April, HAE had still not transferred its case to this District and Borrelli began threatening to seek appointment unilaterally. *Id.* ¶¶ 10-11. She made her intentions clear in an email of April 22, 2025:

> I'm fine holding for a few days, but ***we do need to get moving***. No consolidated complaint will be filed until the motion is granted (and leadership appointed) and all these steps take time.
>
> I continue to be open to figuring out a cooperative leadership structure, but, ***to be clear, we intend to seek a leadership role in this case whether it's be*** [*sic*] ***consent or through motion practice.***

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

*Id.*, Ex. 7 (emphasis added). Despite this antagonistic approach, RMP continued to negotiate, making a formal proposal on April 24. *Id.* ¶ 12 & Ex. 8. Although Borrelli agreed that the proposal "seems reasonable," HAE rejected it, apparently because it wanted an equal share of the fees, despite copying RMP's Complaint, filing in the wrong district, and creating a conflict among class members.[8] *Id.* ¶ 13.

HAE made a counterproposal on May 8, 2025. The proposal had no structure for leadership responsibility, nor any concrete proposal for how to allocate work. It consisted primarily of terms dictating how the law firms would pay the costs of litigation and split up an eventual fee award.[9] *Id.* ¶¶ 14-15.  RMP exited the negotiations because the proposed structure would not "work from a leadership perspective." *Id.* ¶ 16 & Ex. 9.

Nonetheless, Boucher/RMP continued to work cooperatively to streamline consolidation and appointment.  Contrary to the representations in the Opposition, Boucher/RMP did not agree to file joint briefing and then "unilaterally" file this Motion. Shortly after RMP exited negotiations Borrelli emailed on May 11 that it intended to file a consolidation motion two days later—despite the four cases not being related, and the transfer of the *Tuulik* case not being finalized. *Id.* ¶¶ 17-18 & Exs. 9, 10. Given the positions previously taken by Borrelli during negotiations, Boucher/RMP were concerned with Borrelli preemptively seeking consolidation or appointment in one of the later-filed cases. *See*, *e.g.*, *Casey v. Monte Nido & Affiliates Hldgs., LLC*, No. 1:24-cv-23119, 2024 WL 3949404 (S.D. Fla. Aug. 27, 2024) (rejecting preemptive motion for interim appointment filed by Borrelli where two other class actions were pending and had not yet been consolidated).  They promptly notified Borrelli/HAE that, given the procedural posture, they would file a motion to

---

[8] As noted in the moving papers, HAE's lead plaintiff, Ms. Tuulik, repeatedly tried to "out" the Jane Doe plaintiffs on social media.

[9] Among other bizarre terms, HAE proposed that RMP "establish and maintain a litigation fund" to pay the costs of the case and allowing the firms could seek reimbursement of their "[g]eneral office costs" out of the class recovery.

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

consolidate and appoint in this low-numbered case, which would presumptively be the lead case. Robinson Supp. Decl. ¶ 19 & Ex. 10. Notably, Borrelli/HAE did not claim that Boucher/RMP had violated some agreement to jointly file. *Id.* ¶ 20 & Ex. 10.

Boucher/RMP also took the lead in negotiating stipulations to relate and consolidate the four cases and to set an intelligent briefing schedule on appointment. Both of these stipulations were drafted and filed by Bocuher/RMP after extensive negotiations. Borrelli/HAE repeatedly stalled and frustrated these efforts, attempting to condition stipulations on unrelated concessions, slipping material changes into drafts, and—most egregiously—hiding the fact that they were working together and taking radically different positions in negotiations. *See id.* ¶¶ 21-24 & Exs. 11-14. Nonetheless, RMP successfully negotiated both stipulations and agreed to grant a two-week continuance of the hearing to accommodate other parties.

Boucher/RMP have at all times been willing to cooperate with the other firms involved on both sides of this case. They will continue to do so notwithstanding the difficulties caused by other litigants.

### 3. Borrelli/HAE's Reliance on a 32-year-old Disciplinary Matter Is Unprofessional and Irrelevant.

With little to say on the merits, Borrelli/HAE resurrect Mr. Boucher's disciplinary matter from 1992—before any of the other attorneys involved were even practicing. According to Borrelli/HAE, this isolated, decades-old incident somehow raises questions about Boucher's ability to represent the class. It doesn't. Notably, Chief Justice George ordered the execution of suspension stayed.

As to the Ninth Circuit proceeding in 1988, the underlying issue related to Mr. Boucher's handling of a case when he was a newer attorney. As set forth in the opinion, Mr. Boucher was made managing partner of his firm within a year of being admitted and was given charge of a complex dispute in federal court, without meaningful support. At that time, "he had just recently become a member of the California Bar" and "had no prior Federal Court experience." As the Ninth Circuit

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

1  noted, Boucher was assigned a "dog" of a case "shortly after he graduated from law

2  school," "was out of his depth," and "admitted he had been careless" in handling it. *In*

3  *re Disciplinary Action Boucher*, 850 F.2d 597, 599 (9th Cir. 1988), *as modified* June

4  30, 1988. Mr. Boucher was also candid and cooperative with the California State Bar,

5  and acknowledged responsibility of the issue, resulting in his suspension being stayed.

6  Robinson Supp. Decl., Ex. 15. He also took immediate steps to avoid similar

7  problems, including leaving the firm that foisted the case on him.

8      Borrelli/HAE's assertion that Mr. Boucher was "suspended from the practice of

9  law twice" is flatly false. Opp. at 3:3-4.[10]  The Ninth Circuit vacated the proposed

10 suspension by order dated June 30, 1988, after finding that Mr. Boucher's youth and

11 inexperience significantly mitigated the conduct.  Borrelli/HAE presumably know

12 this, since the Ninth Circuit modified the order they misleading cite in their brief.

13 Similarly, the State Bar stayed any suspension in light of mitigating factors.

14     In the subsequent 30-plus years, Mr. Boucher has had a distinguished career

15 devoted to complex litigation on behalf of deserving plaintiffs. He has been appointed

16 to leadership in dozens of cases in state and federal courts—including this Court—and

17 has recovered over $4 billion for plaintiffs in landmark litigation. His cases have

18 included, among a veritable list of others, the largest clergy abuse case in history, a

19 $1.84 billion gas leak case, and a successful antitrust action for manipulation of the

20 California energy market. He was brought into *Senne v. Office of the Commissioner of*

21 *Baseball, et al.* in the Northern District of California as co-trial counsel; the class

22 action settled on the eve of trial for $185 million. *Senne v. Office of the Commissioner*

23

24  _____

[10] The Opposition is riddled with similar inaccuracies. For example, Borrelli/HAE

25 allege – based on the declaration of Ms. Haeggquist, who has no personal knowledge
   – that RMP was "aggressively pursuing [plaintiff Tuulik] as a client, even after she

26 told them no." Opp. at 20:11-13. This is patently false. Ms. Tuulik **contacted RMP** on
   February 6, spoke with a litigation support manager, and followed up by email to

27 counsel Damion Robinson. On February 11, Mr. Robinson simply responded to Ms.
   Tuulik's emails. After learning that Ms. Tuulik had retained HAE, RMP promptly

28 notified HAE she had previously contacted RMP.  Robinson Supp. Decl. ¶ 26.

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

1  *of Baseball,* N.D. Cal. Case No. 3:14-cv-00608-JCS.[11] He has represented, among

2  others, the City of Los Angeles in class litigation on behalf of California cities, and

3  former Governor Gray Davis. He is currently managing the $4 billion proposed

4  settlement with the County of Los Angeles, which he helped negotiate, on behalf of

5  thousands of abuse survivors.[12] He has also won numerous awards, including but not

6  limited to Trial Lawyer of the Decade, the California Lawyer of the Year (CLAY)

7  award from California Lawyer Magazine (twice, in 2008 and 2022), and an award

8  from the Honorable Chief Justice Ronald George and the California State Bar for his

9  efforts on behalf of the California courts. *See generally* Boucher Decl., Ex. 2.

10      An unintentional disciplinary issue decades ago hardly disqualifies Mr. Boucher

11  from adequately representing the class decades later.[13] Mr. Boucher is by far the most

12  experienced and accomplished attorney of any involved in this matter.

### D.   <u>Ms. Borrelli Is Not Eligible to Practice in this District and Has Repeatedly Violated the Court's *Pro Hac Vice* Rules.</u>

15      Proposed lead counsel, Ms. Borrelli, is not licensed in California. The Local

16  Rules are clear that counsel is disqualified from appearing "*pro hac vice* if the

---

[11] *MLB, Minor Leaguers Ink $185M 'Starvation Wage Deal*, Law360 (July 15, 2022): https://www.law360.com/articles/1512283/mlb-minor-leaguers-ink-185m-starvation-wage-deal (last accessed June 11, 2025).

[12] *LA County unanimously approves $4 billion sexual abuse settlement.* CBS News (Apr. 29, 2025): https://www.cbsnews.com/losangeles/news/la-county-unanimously-approves-4-billion-sexual-abuse-settlement/ (last accessed June 11, 2025).

[13] In contrast to the 32-year-old issue raised in the Opposition, serious ethical concerns have repeatedly arisen in Ms. Borrelli's cases in recent years, including preparing sham errata sheets to deposition testimony, *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO, 2020 WL 1245370 (N.D. Cal. Mar. 16, 2020); submitting an expert damages model that relied on theories the court had previously rejected and a misleading study designed "to foment bias," *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996, 2019 WL 7370374, at *3 (E.D. Wis. Dec. 31, 2019); and destroying or tampering with evidence. *See Rensel v. Fluidmaster*, No. SA CV 14–0648 PA, 2014 WL 6466853, at *3 (C.D. Cal. Nov. 12, 2014) ("Plaintiffs' counsel's conduct fell well below the standards of professionalism for attorneys permitted to practice before this Court"), vacated after transfer in *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, MDL No. 2575, 2015 WL 2453034 (N.D. Ill. May 21, 2025).

applicant … is regularly employed in California; or [] is regularly engaged in business, professional, or other similar activities in California." Local Rule 83-2.1.3.2. They are equally clear that *pro hac vice* counsel must be supported by local counsel who "maintains an office within the District for the practice of law, in which the attorney is physically present on a regular basis." Local Rule 83-2.1.3.4.

Despite having her two cases pending in this Court for months, and continuing to actively litigate, Ms. Borrelli has not been admitted *pro hac vice* and represents that her admission is "forthcoming." She did not even apply for admission until two months into the cases, only after appointment negotiations broke down. *See* Robinson Supp. Decl., Exs. 16, 17. While she was actively running the cases in the background, she had junior associates from her Chicago office, who are licensed in California, file pleadings without her name on them. *Id.*, Exs. 18-20. This conduct, at best, is problematic and reflects a manipulation of the privilege of *pro hac vice* admission.

When Ms. Borrelli got around to seeking admission, she violated the Local Rules again by having a Chicago-based associate sponsor her application. *Id.*, Ex. 22. Brazenly attempting to circumvent the Court's rules, her alleged "local counsel" used a fake office address in California—a mailbox facility in San Francisco. *See id.*, Exs. 23, 24. The Court properly denied the application under Local Rule 83-2.1.3.4.

Ms. Borrelli then found a local sole practitioner to sponsor her application. The Court properly denied the second application because she is regularly employed and engaged in legal practice in California without a license.[14] *Id.*, Ex. 25. This finding was clearly correct. Ms. Borrelli has formally appeared in *17 cases* in this District, including 14 in the past three years. *Id.*, Ex. 1. Six of her cases remain pending, including the two she filed in this matter.  She has also appeared in another *24 cases* in

---

[14] On June 9, 2025, Ms. Borrelli filed a third application, failing to address the Court's prior findings. The clerk's office issued a Notice of Deficiency because the applications were not filed in the lead case. *Id.*, Ex. 26. Thereafter, she re-filed the Application in this case and the clerk issued a further Notice of Deficiency because her Certificate of Good Standing is out of date. *Id.* ¶ 37.

- 17 -

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

the Northern District of California. *Id.*, Ex. 2. This does not include any state court cases or cases in which Ms. Borrelli has avoided formally appearing by having California-licensed associates file on her behalf. Formally appearing in at least 41 cases in California plainly constitutes regularly engaging in business.

### E.    Liaison Counsel Is Unnecessary and HAE Is Not Suited to Act as Liaison Counsel in Any Event.

Borrelli/HAE have effectively made up a role for HAE to justify having both firms participate. There is no legitimate need for liaison counsel in this matter. As noted in the Opposition, the role of liaison counsel is generally to assist with administrative matters, such as filings, coordinating among other counsel, and assuring compliance with local rules. Opp. at 18:7-9.  Borrelli/HAE never explains why liaison counsel is needed in a case with at most four active plaintiff-side firms. *See In re Regional Care Data Security Incident Litig.*, No. 4:24CV3236, 2025 WL 675056, at *3 (D. Neb. Mar. 3, 2025) (rejecting Borrelli request for an executive committee, finding it unnecessary where counsel failed to "explain the structure of the committee or what the functions of each committee member will be").

Even if liaison counsel was needed—and it is not—HAE is not well-positioned to serve in this capacity. HAE, including Ms. Haeggquist, is based in another district over 100 miles from Los Angeles.  Ms. Haeggquist also has limited experience litigating in this District, having appeared in only two other cases in the past five years. Robinson Supp. Decl., Ex. 4. She has made no effort to develop working relationships with other counsel, which is necessary to effectively serve as a liaison.

Instead, Ms. Haeggquist had no substantive involvement in this case until Borrelli/HAE filed its Opposition—apparently seeking to take advantage of her experience and resume. Ms. Haeggquist did not participate in a single call or email exchange among counsel in negotiations over a joint leadership structure, consolidation, or the appointment process. Instead, her partner, Aaron Olsen, handled the case, perhaps until the need arose to present an all-woman slate. *Id.* ¶ 38.

- 18 -

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

What's more, HAE has added little or no value to this case and its conduct in the litigation undermines its ability to act in a leadership capacity, much less to liaise with other counsel. As noted above, HAE's lead plaintiff, Ms. Tuulik, created a conflict by seeking to "out" other class representatives on social media. Robinson Decl. ¶ 17. This calls into serious question whether she can be entrusted to act as a fiduciary for absent class members. Naturally, the representatives are reluctant to work closely with someone who attempted to violate their privacy in a public forum shortly after they fell victim to highly invasive data breaches.

Further, despite knowing that this case was pending, HAE filed its "copycat" suit in what it concedes was the wrong venue, in a transparent attempt to forum shop and circumvent this first-filed case. It only agreed to transfer its case to this District after RMP learned of its later-filed action and threatened a motion to stay or transfer under the first-to-file rule. *Id.* ¶¶ 18-19; *see also Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). This tactical filing in the wrong forum delayed consolidation of the cases by several weeks.

Finally, despite proclaiming that it has done substantial work, HAE does not dispute that it copied large portions of RMP's Complaint, including all or virtually all of the substantive factual allegations. The only substantive difference between the original complaints in the two actions was HAE's addition of claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing, which appear non-viable under governing law.[15]

HAE's gamesmanship has not created the sort of cooperative environment that qualifies HAE to serve as liaison counsel. Further, it is unclear what value is added by HAE given its litigation conduct thus far and lack of experience in similar litigation.

---

[15] The "unjust enrichment" claim fails because California law does not recognize a stand-alone cause of action for unjust enrichment. *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021). The implied covenant claim fails because it actually alleges breach of an express contract, precluding reliance on the implied covenant. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

- 19 -

## III.    CONCLUSION

Collectively, the Boucher/RMP team have led the charge in this case from its inception, reflecting a commitment to diligently and zealously pursuing the case on behalf of the putative class. The other two firms seek to piggyback on these efforts by inserting themselves into leadership positions, largely on the strength of a single, notable data breach case. This attempted takeover has nothing to do with the best interests of class members. It is directly contrary to those interests. Because the Rule 23 factors strongly favor Boucher/RMP, those firms should be appointed.

Dated:  June 12, 2025                          Respectfully submitted,
                                               Robinson Markevitch & Parker LLP

                                               By: /s/ Damion Robinson
                                                   Damion D. D. Robinson
                                                   David Markevitch
                                                   Jimmie Davis Parker

                                               Boucher LLP

                                               By: /s/ Shehnaz M. Bhujwala
                                                   Raymond P. Boucher
                                                   Shehnaz M. Bhujwala

                                               *Attorneys for Plaintiffs Jane Does 1-16*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Jane Does 1-16, certifies that this brief contains 6,889 words, which:

<u>xx</u> complies with the word limit of L.R. 11-6.1.

<u>xx</u> complies with the page limit set by court order dated June 4, 2025.

Dated:  June 12, 2025                          By: /s/ Damion Robinson
                                                   Damion D. D. Robinson

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that I filed the foregoing document using the Court's CM/ECF electronic filing platform. I am informed that filing through the CM/ECF Platform results in notice to all interested parties in this action.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on June 12, 2025 at West Hollywood, California.


[Print Name]                                    [Signature]

ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Boulevard, Suite 200
West Hollywood, California 90069