# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 25-898-GW-SSCx | Date | June 27, 2025 |
|---|---|---|---|
| Title | *In Re Jaime S. Schwartz, MD, Data Security Ligitation*<br>*Jane Doe 1, et al. v. Jamie S. Schwartz, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION TO CONSOLIDATE CASES AND TO APPOINT INTERIM CLASS COUNSEL [34]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motion [34] set for hearing on June 30, 2025 at 8:30 a.m.

:

Initials of Preparer    JG

*Jane Doe 1 et al v. Jamie S. Schwartz et al. – In re Jaime S. Schwartz, MD, Data Security Litigation*, Case No. 2:25-cv-00898-GW-(SSCx)
Tentative Ruling on Motion to Appoint Interim Class Counsel

## I.     Background

This litigation generally concerns allegations that Dr. Jaime S. Schwartz ("Dr. Schwartz"), a prominent plastic surgeon with offices in Beverly Hills and Dubai, failed to properly secure the private medical and personal data of his patients,[1] leading to malicious actors gaining access to his network and stealing such data from thousands of patients in an effort to extort Dr. Schwartz and his patients.  *See generally* First Amended Complaint ("FAC"), Docket No. 22.

Before the Court are competing motions for appointment of interim class counsel.[2]  The first proposed slate is Boucher LLP ("Boucher") and Robinson Markevitch & Parker LLP ("RMP") (collectively, the "Boucher/RMP Slate").[3]  *See* Motion to Consolidate Cases and Appoint Interim Class Counsel ("Boucher/RMP Proposal"), Docket No. 34.[4]  The second proposed slate consists of Raina C. Borrelli ("Ms. Borrelli") of Strauss Borrelli PLLC ("SB") as interim class counsel and Alreen Haeggquist ("Ms. Haeggquist") of Haeggquist & Eck, LLP ("HAE") as liaison

---

[1] The data included names, dates of birth, phone numbers, and home addresses – plus, in certain instances, nude photos and videos of patients obtained during the course of treatment.

[2] The parties report that attempted negotiations to agree on respective roles and responsibilities of the attorneys involved failed.  The position sought is designated as "interim" lead class counsel because it is expected that litigation would proceed as a consolidated class action which will require an eventual application for class certification which will, in turn, include the consideration of adequacy of representation which will, in turn, raise the issue of competency of counsel before the final appointment of class counsel.  *See generally*, Fed. R. Civ. P. 23(g)(3).  Conceivably (although it is somewhat unlikely), the attorneys who are ultimately appointed as class counsel at class certification could be different than those selected as interim class counsel.

[3] In their Motion, the Boucher/RMP Slate highlights five attorneys that would lead the litigation: (1) Raymond P. Boucher ("Mr. Boucher"), a partner at Boucher; (2) Shehnaz M. Bhujwala ("Ms. Bhujwala"), a partner at Boucher; (3) Damion Robinson ("Mr. Robinson"), a partner at RMP; (4) David Markevitch ("Mr. Markevitch"), a partner at RMP; and (5) Jimmie Davis Parker ("Mr. Parker"), a partner at RMP.  *See* Boucher/RMP Proposal at 10-12.

[4] After the Boucher/RMP Slate filed the motion, all counsel stipulated to relating and consolidating the following cases, all of which were filed in this District: the present *Jane Doe 1 et al v. Jamie S. Schwartz et al*, Case No. 2:25-cv-00898; *Darlene Tuulik et al v. Carla J. Schwartz et al*, Case No. 2:25-cv-04446-GW-(SSCx); *Jane Doe v. Jaime S. Schwartz MD PC et al*, Case No. 2:25-cv-02263-GW-(SSCx); *Jane Doe v. Jaime S. Schwartz MD PC*, Case No. 2:25-cv-03393-(SSCx).  *See* Docket No. 39.  The plaintiffs in Case Nos. 2:25-cv-02263 and 2:25-cv-03393 were represented by Strauss Borrelli PLLC ("SB") and Daniel Srourian ("Srourian"); and the plaintiffs in Case No. 2:25-cv-04446 were represented by Haeggquist & Eck LLP ("HAE").

The Court issued an order: (1) approving the stipulation to relate and consolidate all of the above cited actions into Case No. 2:25-cv-00898; (2) entitling the consolidated case as "*In re Jaime S. Schwartz, MD, Data Security Litigation*; and (3) administratively closing the other cases.  *See* Docket No. 47.

counsel (collectively, the "Borrelli/Haeggquist Slate").  *See* Opposition ("Borrelli/Haeggquist Proposal"), Docket No. 44.  Both slates filed replies.  *See* Boucher/RMP Reply, Docket No 51; Borrelli/Haeggquist Reply, Docket No. 57.  The Court has considered the proposals, replies, and the declarations submitted in support.

The Court finds that both proposed slates are well-qualified to competently serve as interim lead counsel and each would offer distinct benefits to the proposed class.  The Court has identified the particular strengths of each below.  Given these findings, the Court is considering drawing from both slates to craft its own slate; but, the Court is initially wary of doing so due to the apparent hostile nature of the briefing before it.  The Court will entertain further discussion at the hearing.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 23(g)(3), "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  "In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *see also White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006) ("Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members.").

Designation of interim class counsel is also appropriate when there is competition between law firms to represent the class.  *See Parish v. Nat'l Football League Players, Inc.*, No. 3:07-cv-00943-WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007) (declining to designate interim class counsel where there was only "a single action" and no "gaggle of law firms jockeying to be appointed").  In cases where attorneys cannot "coordinate their activities without the court's assistance," a court should "invite submissions and suggestions from all counsel and conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible."  Ann. Manual for Complex Lit. §§ 10.22, 21.272 (4th ed.). Federal Rule of Civil Procedure 23(g)(1)(A) sets out the considerations that courts must weigh when appointing class counsel once a class has been certified, which courts also apply to the appointment of interim class counsel prior to class certification.  *See, e.g., Wright v. Jacob*

*Transportation, LLC*, No. 2:15-cv-00056-JAD-GEF, 2015 WL 3916001, at *3 (D. Nev. June 24, 2015). The four factors courts must consider when appointing interim class counsel include: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

A court may only appoint class counsel "if the applicant is adequate under Rule 23(g)(1) and (4)," and "[i]f more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

### III. <u>Discussion</u>

Both slates argued that their proposed group of attorneys would provide superior representation to plaintiffs based on the Rule 23(g)(1) factors. Additionally, both sides spent considerable space in the briefing undermining the other proposed slate, with each side accusing the other of engaging in "ad hominem" attacks and distracting from the real issues. *See* Boucher/RMP Reply at 10; Borrelli/Haeggquist Reply at 1. The Court would note that such behavior weighs against any potential compromise that would include members of both proposed slates, but does not necessarily rule out such a possibility altogether. The Court will analyze each Rule 23(g)(1) factor in turn.

#### A. Work Done Identifying or Investigating Claims

The Boucher/RMP Slate has done considerable work on this matter and filed the first of the consolidated cases on February 3, 2025. *See* Docket No. 1. Their efforts include conducting a "comprehensive investigation of data breaches"; engaging a forensic IT firm, a hacking consultant, and an information security expert in order to conduct forensic examinations, archive hacker websites, and search the dark web; researching potential theories of liability under federal and state law; interviewing victims and seeking input from and providing updates to class representatives; coordinating efforts to report incidents to law enforcement; and negotiating the drafting of and drafting the FAC, which they refer to as "the most detailed and comprehensive of [that in] any of the four cases." *See* Boucher/RMP Proposal at 9-10. The Boucher/RMP Slate asserts that they have done "substantially more work" than the other slate, with the latter having

3

filed "copycat" cases weeks later.[5] *See* Boucher/RMP Reply at 3-4.

The Borrelli/Haeggquist Slate has also spent meaningful time on this matter, though their involvement began later. Ms. Borrelli began her research and investigative efforts when Dr. Schwartz publicly announced the first data breach (of two alleged breaches) in January 2025. *See* Borrelli/Haeggquist Proposal at 13; FAC ¶ 101. After further investigating the facts surrounding the breach, researching legal claims, vetting potential class representatives, and consulting with experts in data security and the dark web, Ms. Borrelli filed two complaints on March 12, 2025 and March 13, 2025 respectively. *See* Borrelli/Haeggquist Proposal at 13; *see also Jane Doe v. Jaime S. Schwartz MD PC et al*, Case No. 2:25-cv-02263, at Docket No. 1; *Jane Doe v. Jaime S. Schwartz MD PC*, Case No. 2:25-cv-03993, at Docket No. 1-1. HAE too has played a role. HAE asserts that they have done meaningful research beyond what was done by the Boucher/RMP Slate, leading them to name three more defendants and raise two more causes of action, which were not listed in the FAC, in their March 11, 2025 complaint. *See Darlene Tuulik et al v. Carla J. Schwartz et al*, Case No. 2:25-cv-04446-GW-(SSCx), at Docket No. 1. The firm has also dedicated resources to removing from the internet URLs with plaintiffs' nude images by reaching out to law enforcement agencies in the United States and Russia where the URLs are hosted. *See* Borrelli/Haeggquist Proposal at 22.

The Court finds that this factor tips in the favor of the Boucher/RMP Slate. The Boucher/RMP Slate began investigating these claims far earlier and filed their complaint over a month before the opposing slate filed any of their three complaints; though filing first may not necessarily be determinative of which slate should be appointed interim class counsel in general, in this case, it does suggest more familiarity with the case and more significant work identifying and investigating the claims at issue. Though similarities between the complaints in the four actions are unavoidable, as each brings similar causes of action related to the same alleged conduct, the Boucher/RMP Slate asserts that at least HAE's complaint contains "substantive allegations [that] were largely copied (word for word)" from their own complaint;[6] HAE does little to refute

---

[5] Indeed, the Boucher/RMP Slate argues that the HAE complaint was "largely a verbatim copy of RMP's Complaint." Boucher/RMP Reply at 4.

[6] The Boucher/RMP Slate also asserts that the complaints in both *Jane Doe v. Jaime S. Schwartz MD PC et al*, Case No. 2:25-cv-02263 and *Jane Doe v. Jaime S. Schwartz MD PC*, Case No. 2:25-cv-03993 "include largely identical substantive allegations" and diverge largely in that those complaints misstate facts. *See* Boucher/RMP Proposal at 15.

this allegation, and the Court finds that it has some merit.[7] *See* Boucher/RMP Proposal at 3; *Darlene Tuulik et al v. Carla J. Schwartz et al*, Case No. 2:25-cv-04446-GW-SSC, at Docket No. 1.; *Jane Doe 1 et al v. Jamie S. Schwartz et al*, Case No. 2:25-cv-00898, Docket No. 1. In addition to the Boucher/RMP Slate's substantial work developing facts and legal theories, it appears to the Court that that slate has done more substantial work engaging with forensic experts to better understand the scope of the damage and claims that are viable as a result.

### B. Experience of Counsel

Both slates bring a wealth of experience in class actions and complex litigation. The Court takes particular note of the fact that Ms. Borrelli has the most relevant legal experience, as the only attorney before the Court who has litigated data breach class actions involving sensitive medical information of medical patients. *See* Borrelli/Haeggquist Proposal at 8-10; Borrelli/Haeggquist Reply at 4; *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."). Indeed, she is currently litigating data breach class actions in Arizona, Washington, Illinois, Nevada, and Missouri, and has litigated multiple data breach cases in the past where sensitive medical information and nude photos of patients were at issue.[8] *See* Borrelli/Haeggquist Proposal at 8-10. The Court also notes favorably HAE's focus on trauma-informed support for plaintiffs. *Id.* at 20.

That being said, the Boucher/RMP Slate has more experience litigating class action cases generally and also has significant experience litigating relevant cases, such as those relating to data breaches as well as those relating to highly sensitive issues like childhood sexual abuse cases against the Catholic Archdiocese of Los Angeles and Roman Catholic Diocese of San Diego. *See* Boucher/RMP Proposal at 10-11; Boucher/RMP Reply at 6-7.[9] Furthermore, the Court finds that counsel's "presence in this District" is a relevant form of experience that makes an application to

---

[7] Still, the Court notes that the HAE complaint does include two additional causes of action and three additional defendants. *See Darlene Tuulik et al v. Carla J. Schwartz et al*, Case No. 2:25-cv-04446-GW-(SSCx), at Docket No. 1. Furthermore, there is no evidence that the filing of the Boucher/RMP Slate's complaint led to the filing of the subsequent complaints; rather, the announcement from Dr. Schwartz appears to have been the impetus for the later-filed actions.

[8] Ms. Borrelli has helped her clients obtain substantial settlements in at least some of those actions. *See* Borrelli/Haeggquist Proposal at 9-10.

[9] The Court would note that while both the Boucher partners and the RMP partners have significant class action experience, the Boucher partners appear to have more experience relevant to cases involving data breaches and the like than the RMP partners as well as more experience as lead counsel.

serve as lead counsel more "compelling." *In re Ring LLC Priv. Litig.*, No. 2:19-cv-10899-MWF-(RAOx), 2020 WL 9763065, at *2 (C.D. Cal. Nov. 13, 2020).[10] This is particularly the case as the claims at issue center on California state law tort and statutory claims.

Overall, the Court finds each slate to be highly qualified and capable of ably serving as lead class counsel. Therefore, this factor does not tip strongly in any direction. Still, the Court would note the potentially complementary strengths of the respective slates.

### C. Knowledge of Counsel

Given their extensive experience already highlighted by the Court, both proposed slates no doubt have sufficient knowledge of the relevant law to adequately serve as lead counsel. Therefore, this factor is also neutral as to both slates. The Court would once again note the potentially complementary strengths of the respective slates.

### D. Resources

Both slates assert that their resources are sufficient to effectively represent the class. Boucher is evidently the largest plaintiffs' firm involved in this case. *See* Boucher/RMP Reply at 7-8. However, both slates assert that they are equipped to devote the necessary financial and staffing resources to the case, and the Court has seen only limited evidence to the contrary.[11]

### E. Other Pertinent Matters

The parties raise several other matters that they find pertinent to the appointment of interim class counsel, including the diversity of the representation, the number of named plaintiffs chosen, the timing of the complaints, the willingness and ability of the attorneys to work collaboratively, and various issues surrounding Mr. Boucher's disciplinary records and Ms. Borrelli's past conduct and *pro hac vice* difficulties.

First, the Borrelli/Haeggquist Slate argues that the "male-dominated" structure proposed by the Boucher/RMP Slate is ill-suited to a case where most if not all plaintiffs are women who

---

[10] The Court takes note of the potential efficiency gains and cost-savings in having interim lead counsel be local. The Court also notes that, while HAE has a satellite office in Los Angeles, Ms. Haeggquist's experience in the district is far less substantial than that of the Boucher/RMP Slate. Still, she appears to have significant experience with litigation concerning California's privacy laws.

[11] The Borrelli/Haeggquist Slate refutes the allegation that Borrelli is "oversubscribed," *see* Boucher/RMP Reply at 4, and asserts that Borrelli is in the process of adding associates and paralegals to manage their growing caseload, *see* Borrelli/Haeggquist Reply at 3-4. The Court does take note of the instances cited by the Boucher/RMP Slate suggesting instances of lapses in diligence on the part of Borrelli, *see* Boucher/RMP Reply at 5, though the Borrelli/Haeggquist Slate asserts that those instances were cherry-picked, *see* Borrelli/Haeggquist Reply at 4.

6

have had their naked photos publicly posted, asserting that "Borrelli (a woman-and-LGBTQ-led firm) and HAE (a proud women- and minority-owned firm) bring [the necessary] diversity to this putative class action." *See* Borrelli/Haeggquist Proposal at 2, 20. The Boucher/RMP Slate contends that "having an all-woman team does not make Borrelli/HAE more diverse," and, in any case, six of Boucher's eleven attorneys are women, including two partners. Boucher/RMP Slate Reply at 1, 8. The Court finds that this factor tips very slightly in favor of the Borrelli/Haeggquist Slate, due in part to the likely make-up of the members of the class, and the fact that four of the five proposed lead counsel of the Boucher/RMP Slate are men. *In re Robinhood Outage Litig.*, No. 3:20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) ("[T]he attorneys running this litigation should reflect the diversity of the proposed national class."). Still, the Boucher/RMP Slate has a track record of valuing diversity as well, and while important, diversity considerations do not outweigh the other Rule 23(g)(1) factors. *See In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO, 2022 WL 18399978, at *4 (N.D. Cal. Dec. 21, 2022) (finding that "the [Rule 23(g)(1)] factors are not equal" and refusing to "emphasize diversity to the exclusion of . . . the other Rule 23(g)(1) factors.").

Second, the Borrelli/Haeggquist Slate argues that "[f]iling a class action lawsuit with 15 lead plaintiffs underscores Robinson & Boucher's inexperience in class action litigation," because it will lead to substantial resources being wasted on providing all of these plaintiffs with regular updates, responding to more discovery, and defending more depositions, when a smaller number of named plaintiffs would accomplish the same goal. *See* Borrelli/Haeggquist Proposal at 15-16. The Boucher/RMP Slate argues that selecting a large number of named plaintiffs is a deliberate strategic move to account for differences among class members regarding to what extent their data was leaked and to what extent they were notified. *See* Boucher/RMP Reply at 11. They also assert that inclusion of more plaintiffs provides safety for the class in the case that certain named plaintiffs' claims are found to be lacking in discovery. *See id.* The Court sees some merit in both strategic decisions and does not find either strategy disqualifying.

Third, regarding the timing of the filing of the four complaints, the Court notes that the Boucher/RMP Slate filed their complaint over a month before those filed by the other slate. The Court also notes that while some courts have treated the time of filing as an "objective tie-breaker" where other factors are in equipoise, *see In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447-ART-BNW, 2024 WL 2959279, at *6 (D. Nev. June 12, 2024) (internal

7

citation and quotation marks omitted), others have voiced concern about promoting a "race to the courthouse," *see Outten*, 281 F.R.D. at 199 (internal citation and quotation marks omitted).

Fourth, both slates argue that they were instrumental in coordinating between the four plaintiffs' firms involved and that the other side scuttled negotiations by making unreasonable proposals or acting unilaterally. *See* Borrelli/Haeggquist Proposal at 4-6; Boucher/RMP Reply at 12-14. The Court is not in a position to determine the relative merits of such claims but would stress the importance of coordination, particularly if members from both slates are to be appointed.

Finally, the Borrelli/Haeggquist Slate raised concerns about Mr. Boucher's "past disciplinary conduct," *see* Borrelli/Haeggquist Proposal at fn. 7, and the Boucher/RMP Slate in turn raised concerns about Ms. Borrelli's past conduct and her *pro hac vice* application challenges, *see* Boucher/RMP Reply at 16-18, fn. 13. The Court is not particularly moved by any of the cited material. The disciplinary matters regarding Mr. Boucher are over 30 years old and are mitigated by the circumstances surrounding the conduct. The more recent conduct cited by the slates in regard to Mr. Boucher and Ms. Borrelli is hardly disqualifying and appears cherry-picked from generally impressive records. Finally, the Court has granted Ms. Borrelli's *pro hac vice* application and does not see the initial rejections as meaningful to the question of interim class counsel.

## IV. <u>Conclusion</u>

In consideration of all the factors and the best interests of the class, the Court may "appoint its own 'slate.'" *See In re Ring*, 2020 WL 9763065, at *2. Given the previous analysis and the distinct benefits counsel from both proposed slates offer, the Court is considering doing so but remains wary due to the potential animosity demonstrated in the briefing. Counsel seeking appointment shall discuss at the hearing to what extent they are prepared to cooperate if appointed to work with counsel from the other slate instead of their preferred lineup.

Additionally, neither Motion proposed fee arrangements. *See* Fed. R. Civ. P. 23(g)(1)(D). The Court expects proposed interim lead counsel to discuss proposals for fees[12] and associated recordkeeping at the hearing.[13]

---

[12] The Court may require billing rates to be filed under seal for all counsel that will be working on the case, plus concomitant figures for paralegals, administrative staff, etc.

[13] The Court would warn all counsel at this time that it will not accept block-billing without applying at least a 35% initial automatic reduction.

8