1  LEWIS BRISBOIS BISGAARD & SMITH LLP
   MICHAEL K. GRIMALDI, SB# 280939
2     E-Mail: Michael.Grimaldi@lewisbrisbois.com
   633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
   Telephone: 213.250.1800
4  Facsimile: 213.250.7900

5  Attorneys for Defendants
   Jaime S. Schwartz, MD,
6  Jaime  S. Schwartz, MD PC,
   Karen Herbst, MD.,
7  Karen Herbst, MD PC,
   Total Lipedema Care

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12

13  *In re Jaime S. Schwartz, MD, Data*     Lead Case No. 2:25-cv-00898-GW-SSC
    *Security Litigation*                   (consolidated with 2:25-cv-03393,
14                                          225-cv-04446, 225-cv-02263)

15                                          Hon. George H. Wu

16                                          **DEFENDANTS' OPPOSITION TO
                                            PLAINTIFFS' MOTION TO PROCEED
17                                          USING PSEUDONYMS**

18                                          Filed concurrently with the Declarations
                                            of Jaime Schwartz, MD and
19                                          Michael Grimaldi

20
                                            DATE:  October 6, 2025
21                                          TIME:   8:30 a.m.
                                            DEPT:  9D
22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

# TABLE OF CONTENTS

Page

I.    Introduction ........................................................................................... 1

II.    Background............................................................................................. 2

III.    Legal Standard for Plaintiffs to Proceed Anonymously ................................... 4

IV.    The Three Situations in *Advanced Textile* (One Not Relevant)........................ 8

V.    The First Situation: The Risk of Retaliatory Harm Is Speculative. ................. 8

A.    Factors One and Two: Severity of the Threatened Harm and
Reasonableness of Fear............................................................................ 8

B.    Factor Three: Minimal Vulnerability to Retaliation. ........................... 11

C.    Factors Four and Five: Significant Prejudice to the Opposing
Party and the Public's Interest. .............................................................. 12

VI.    The Second Situation: Preservation of Privacy in a Matter of Sensitive
and Highly Personal Nature Does Not Rise to the Level Requiring
Pseudonyms. ........................................................................................ 13

VII.    The Availability of Other Protective Measures and Protective Order
Negates the Need for Pseudonyms................................................................ 16

VIII.    Plaintiffs Have Waived Their Right to Privacy Because They Have
Heavily Featured Their Medical Conditions in Their Complaints. ............... 17

IX.    Conclusion ........................................................................................... 18

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

5

*Brnovich v. Biden*,
    2021 WL 7630109 (D. Ariz. Dec. 15, 2021)......................................................... 10

6

7

*Doe v. Amazon.com, Inc.*,
    2011 WL 13073281 (W.D. Wash. Dec. 23, 2011)................................. 9, 10, 11

8

9

*Doe v. Ayers*,
    789 F.3d 944 (9th Cir. 2015) ................................................................................ 5

10

11

*Doe v. Chevron*,
    2025 WL 2260155 (N.D. Cal. Aug. 7, 2025)............................................... 16, 17

12

13

*Doe v. City & Cnty. of San Francisco*,
    2017 U.S. Dist. LEXIS 64291 (N.D. Cal. 2017).............................................. 15

14

15

*Doe v. Elson S. Floyd College of Medicine*,
    2021 WL 4197366 (E.D. Wash. Mar. 24, 2021) .............................................. 12

16

*Doe v. John F. Kennedy Univ.*,
    2013 WL 4565061 (N.D. Cal., Aug. 27, 2013)........................... 1, 14, 16, 17, 18

17

18

*Doe v. Kamehameha Schools*,
    596 F.3d 1036 (9th Cir. 2010).............................................2, 4, 5, 7, 8, 9, 10, 11

19

20

*Doe v. Rostker*,
    89 F.R.D. 158 (N.D. Cal. 1981) ......................................................................... 15

21

22

*Doe v. Sessions*,
    2018 WL 4637014 (D.D.C. 2018)...................................................................... 15

23

24

*Doe v. United Airlines, Inc.*,
    2018 U.S. Dist. LEXIS 141573 (D. Nev. Aug. 21, 2018).............................. 5, 8

25

26

*Doe v. United States Department of Health and Human Services*,
    2012 WL 12964650 (D. Ariz. Aug. 23, 2012) ................................................. 14

27

*Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ....................................................................*passim*

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Doe No. 1 v. Wynn Resorts Ltd.*,
    2022 WL 3214651 (D. Nev. Aug. 9, 2022).................................................. 11, 12

*Gavin v. Hilton Worldwide, Inc.*,
    291 F.R.D. 161 (N.D. Cal. 2013) ...................................................................... 17

*James v. Jacobson*,
    6 F.3d 233 (4th Cir. 1993) .......................................................................... 15, 16

*Jane Roes 1-2 v. SFBSC Management, LLC*,
    77 F. Supp. 3d 990 (N.D. Cal. 2015)................................................................. 15

*Much v. Gessese*,
    339 F.R.D. 625 (C.D. Cal. 2018)...................................................................... 17

*Nixon v. Warner Commc'ns*,
    435 U.S. 589 (1978) ........................................................................................... 4

*Plaintiff B v. Francis*,
    631 F.3d 1310 (11th Cir. 2011) ........................................................................ 15

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ........................................................................................... 4

*Roe v. Catholic Health Initiatives Colo.*,
    2012 U.S. Dist. LEXIS 713 (D. Colo. 2012)............................................... 15, 16

**Statutes**

Cal. Civil Code § 1708.85 ......................................................................................... 2

Fair Labor Standards Act............................................................................................. 6

Health Insurance Portability and Accountability Act (HIPAA)........................... 2, 3

**Other Authorities**

Federal Rules of Evidence, Rule 801 ...................................................................... 13

Federal Rules of Civil Procedure, Rule 10...................................................... 4, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

# I. INTRODUCTION

In nearly every data-security case, the named plaintiffs use their real names. Plaintiffs are requesting to break the default rule that courts are open forums. Plaintiffs request they be permitted to proceed anonymously so that their real names are not used in this litigation. Plaintiffs, however, have offered _no evidence_ and thus _failed to meet their burden_ to prove this "extraordinary" measure is necessary. Plaintiffs' motion provides no substantive information about the proposed plaintiffs (there are no plaintiff declarations) for the defendants or the Court to evaluate. Plaintiffs only offer an argument that they fear retaliation and privacy violations from the criminal threat actors who targeted Doctor Jamie Schwartz and his surgical medical practice. What the threat actors did, of course, is despicable and criminal. But Plaintiffs provide no evidence that the threat actors are going to "retaliate" against the plaintiffs if they sue Dr. Schwartz using their names. In fact, three plaintiffs in the consolidated actions (_Tuulik_) have already put their name on the caption and have not been retaliated against. Grimaldi Decl., Ex. 1.

Plaintiffs' only evidence is contained in one attorney declaration. ECF No. 70-2. The motion consists of Plaintiffs' counsel's ipse dixit. _Id._ Plaintiffs rely solely on "could" statements and speculation about what the threat actor could do. Critically, the parties have already entered a protective order. ECF No. 67. The Court should fashion less drastic measures to accommodate any privacy issues.

Ninth Circuit precedent sets a high bar for Plaintiffs to meet. Courts typically grant motions to proceed anonymously only in "unusual" cases involving substantial stigma or concrete threats of harm. _Does I thru XXIII v. Advanced Textile Corp._, 214 F.3d 1058, 1067-68 (9th Cir. 2000). For example, pseudonyms have been permitted in cases involving disclosure of HIV/AIDS status but denied in more common conditions such as ADHD. _Doe v. John F. Kennedy Univ._, 2013 WL 4565061, at *3 (N.D. Cal., Aug. 27, 2013). Lipedema does not meet that threshold because it is a common disease affecting up to 11% of women. _See_ Grimaldi Decl. Ex. 2, at 1. This

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

case rises to nowhere near the shocking level of retaliatory conduct or privacy violations that necessitate pseudonyms. *See*, *e.g.*, Cal. Civ. Code § 1708.85(f)(1) (statutory right of pseudonym use to victims of revenge porn). The facts involve criminal threat actors targeting medical providers where the patients' files are being used to extort a ransom payment.

In short, Plaintiffs have failed to meet their *evidentiary burden* to use fictitious names under the controlling standards articulated in *Advanced Textile*, 214 F.3d 1058 and *Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010).

## II.    BACKGROUND

Doctor Jaime Schwartz and his surgical practice were targeted with a cyber ransom attack by a criminal threat actor. Dr. Schwartz engaged experts to handle the breach response. Because he is running a medical practice, the doctor submitted the required Breach Notification to the Office for Civil Rights (OCR) at the Department of Health and Human Services. *See* Grimaldi Decl. Ex. 7 (1/6/25 OCR narrative, Health Insurance Portability and Accountability Act (HIPAA) Breach Notification). This OCR narrative provides the facts of the phishing attack on Dr. Schwartz:

- On June 27, 2024, Jaime S. Schwartz MD, PC ("Dr. Schwartz") received an email from an anonymous proton email account. The email contained a link to a mega.nz site, along with a username and password to access the site. Dr. Schwartz immediately engaged a specialized third-party forensic incident response firm to conduct a forensic investigation and determine the extent of the compromise.

- The mega.nz site contained electronic health records stolen from Dr. Schwartz's third party hosted EHR platform (ModMed), along with a *ransom note* wherein the threat actor claimed to have compromised ModMed by stealing an employee's credentials via *phishing email*, after calling the office.

- For background, Dr. Schwartz contracts with MEDVA (Medically Training Virtual Assistants) to outsource staffing. Diana Tagaban, an employee of MEDVA, handled Dr. Schwartz's appointment scheduling. To perform her duties for Dr. Schwartz's practice, Ms. Tagaban has access to ModMed, a third-party hosted medical billing and practice management system. Ms. Tagaban does not have access to Dr. Schwartz's network environment. The forensic

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2

investigation determined that *Ms. Tagaban [the MEDVA employee] fell victim to a social engineering and subsequent phishing email scheme*.

- Specifically, Ms. Tagaban allowed a threat actor remote access to her computer. Utilizing Ms. Tagaban's workstation remotely, the threat actor captured and utilized Tagaban's username and credentials to access and download Dr. Schwartz's data from ModMed from April 3, 2024, to April 24, 2024.

- Electronic discovery was required to identify the names of all individuals whose protected health information was impacted.

- A total of 417 individuals subject to HIPAA were impacted in this incident. Since this was a *breach of a third party and not a breach of Dr. Schwartz's network*, Dr. Schwartz was required to rely on third parties for the investigation. [emphasis added.]

The threat actors demanded that Dr. Schwartz make a ransom payment. Note, the FBI's policy states it does not "support" paying ransoms in cyber-attacks like this: "*The FBI does not support paying a ransom in response to a ransomware attack*. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity." Grimaldi Decl., Ex. 8. To encourage the ransom payment, the threat actors created a website referred to as "Dr Jaime Schwartz data breach" that contains a list of approximately 80 patient files. ECF No. 70-2, ¶¶ 5-6 & Ex. 2. Upon clicking on an individual patient's file on this website, the website displays the patient's driver's license and insurance card as well as nude and/or partially clothed images of the patient. ECF No. 70-2 ¶ 6. Counsel for the parties could make arrangements to share this website address with the Court if the Court wishes to view the website *in camera*.

Plaintiffs are patients of Dr. Schwartz whose patient files were compromised in this attack. Plaintiffs did not submit any evidence themselves, such as declarations. There is no evidence that any of the proposed "Jane Doe" plaintiffs are on this threat-actor website. The only evidence provided in Plaintiffs' motion is a single attorney

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

declaration. ECF No. 70-2.

III.    **LEGAL STANDARD FOR PLAINTIFFS TO PROCEED ANONYMOUSLY**

Firmly embedded in the American judicial system is a presumption of openness in judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569-574 (1980) (describing the benefits of full access to the court system); *see also Nixon v. Warner Commc'ns*, 435 U.S. 589, 612 (1978) (noting that the common law right of access to courtroom is a precious common law right, one that predates the Constitution itself.)

That is why our court system has a default preference for openness, and parties are allowed to use pseudonyms "in the '*unusual case*' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Advanced Textile*, 214 F.3d at 1067-68 (emphasis added).

If such unusual or special circumstances exist, the district court exercises discretion to permit a party to remain anonymous only if "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. The court must "determine the precise prejudice at *each stage of the proceedings* to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.* (emphasis added). The court must also decide "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Id.* at 1068-69.

Federal Rules of Civil Procedure Rule 10(a) commands that the title of every complaint must name all the parties. "The normal presumption in litigation is that parties must use their real names." *Kamehameha Schs.*, 596 F.3d at 1042. In *Advanced Textile*, the Ninth Circuit held:

> [A] district court must balance the need for anonymity against the
> general presumption that parties' identities are public information and
> the risk of unfairness to the opposing party. Applying this balancing test,
> courts have permitted plaintiffs to use pseudonyms in three situations:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32                                    4
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

(1) when identification creates a risk of retaliatory physical or mental harm;

(2) when anonymity is necessary "to preserve privacy in a matter of sensitive and highly personal nature"; and

(3) when the anonymous party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]"

*Advanced Textile*, 214 F.3d at 1067-68; *see also Doe v. Ayers*, 789 F.3d 944, 945-946 (9th Cir. 2015) (noting that proceeding under a pseudonym is a "high bar").

If a party seeks to sue anonymously based on retaliatory harm (the first situation), courts apply a five-factor balancing test that weighs: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to retaliation, (4) prejudice to the opposing party, and (5) whether the public's interest in the case requires that litigants reveal their identities. *Kamehameha Schs.*, 596 F.3d at 1042. The first and second factors are the most important. *Id.* at 1042-43.

Where a party does not allege a risk of retaliatory harm (e.g., party asserts privacy in sensitive and highly personal matters), courts engage in a condensed analysis weighing: (1) the party's interest in anonymity, including the severity of any likely harm; (2) any prejudice to the opposing party; and (3) the public's interest. *Doe v. United Airlines, Inc.*, 2018 U.S. Dist. LEXIS 141573, at *2-3 (D. Nev. Aug. 21, 2018).

The Ninth Circuit has made clear that plaintiffs wishing to proceed anonymously have a *<u>significant evidentiary burden</u>* to overcome the default rule that court proceedings stay open. In *Advanced Textile*, 214 F.3d 1058 (9th Cir. 2000), the Ninth Circuit reversed the district court's dismissal of the plaintiffs' complaint using fictitious names, holding that anonymity is permissible when plaintiffs demonstrate "an objectively reasonable fear of *<u>extraordinarily severe retaliation</u>*." *Id.* at 1062. Twenty-three foreign garment workers in Saipan filed suit anonymously against their

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32                                    5
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

1   employers, alleging multiple violations of the Fair Labor Standards Act. The worker

2   plaintiffs "used fictitious names in their complaint because they fear that, if their

3   identities are disclosed to defendants and other nonparties to this action, they will be

4   fired from their jobs, deported from Saipan," and that they or their families would be

5   "arrested and imprisoned by the People's Republic of China." *Id.*; *see also id.* at 1065.

6       The Court held that plaintiffs provided <u>*significant evidence to prove*</u> they face

7   "'greater threat[s] of retaliation than the typical [FLSA] plaintiff.'" *Id.* at 1070-71.

8   Plaintiffs faced "extraordinary" consequences because they as foreign workers could

9   be deported if fired even retaliatorily. If fired, blacklisted, or deported, they would

10  consequently be "burdened with debts arising from their contracts with the recruiting

11  agencies. Plaintiffs fear accruing debts because they know Chinese citizens who have

12  been threatened with arrest and incarceration because they could not pay their debts to

13  recruiters." *Id.* at 1071. Plaintiffs' fears were reasonable, as plaintiffs provided

14  <u>*evidence*</u> that they on numerous occasions were:

        interrogated about, warned against, and threatened for making
15      complaints about their working conditions by defendants and recruiting
16      agents. Threats ran the gamut from termination and blacklisting, to
        deportation, arrest, and imprisonment. Plaintiffs' employers have the
17      power to terminate workers, and cause them to be deported. In addition,
        the government of China has the ability to arrest and imprison its
18      citizens. Evidence of collaboration between defendants, the recruiting
        agencies, and China's government suggests that threats made by
19      defendants and the recruiting agents may be carried out by China's
        government. The fact that the Chinese government has punished workers
20      for complaining about their working conditions abroad also bolsters the
        reasonableness of plaintiffs' fears. [*Id.*]

21      In addition to reasonable fear about severe harm, the *Advanced Textile*

22  plaintiffs were also extraordinarily vulnerable to retaliation. Under the terms of their

23  recruitment contract, they were present in Saipan solely for working in the

24  defendants' garment factories – they lacked the freedom to quit working for one

25  employer and seek employment at another factory. Defendants could terminate

26  plaintiffs at will and also had "the power to have foreign workers deported almost

27  instantly" despite laws in Saipan prohibiting summary deportation. *Id.* at 1072.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiffs also resided in company housing, and *evidence* indicated that some employers attempted to "prevent their employees from leaving the 'barracks' without permission." *Id.*

In *Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010), on the other hand, the plaintiffs did not provide sufficient evidence. There, hopeful non-Native Hawaiian children filed suit anonymously seeking to gain admittance to a Native Hawaiian school with an alleged race-based admissions policy. *Id.* at 1038. The school's publicly acknowledged policy is to grant admission to any applicants with any native blood before admitting other applicants. *Id.* at 1039. Public reactions to two previously filed cases where the plaintiffs were admitted to the school were adverse. *Id.* at 1040. Public reaction was still adverse even in a situation where the schools voluntarily admitted a non-native applicant after determining all qualified native applicants were admitted; subsequent outcry caused the schools to change its admission qualifications, effectively ensuring that there would never be an insufficient number of qualified native applicants. *Id.* at 1039.

The children plaintiffs alleged fear of harm, citing as evidence from harm the threats made during the other two cases – "kill haole day everyday," which prompted the U.S. Attorney for Hawaii to warn the public that race crimes were a federal felony; calls to "break [the plaintiff's and his attorney's] every bone and make [those] bastards suffer; statements that "now the boy will have to pay" and that the plaintiff and his mother be exposed to force them "to stand up and face those that they are robbing." *Id.* at 1040. The children plaintiffs further cited to various internet postings regarding their lawsuit, which made statements such as the plaintiffs were "jus gonna get lickins everyday" if admitted, and that plaintiffs' "haole attorneys continue doing this, one day they're gonna be targeted by some crazy Hawaiian or group of Hawaiians armed with baseball bats or guns." *Id.* Although certainly severe, "fear of severe harm is irrelevant if the plaintiffs do not *reasonably* fear severe harm." *Id.* at 1044.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The magistrate judge found that the plaintiff children's fears were
unreasonable. The magistrate found that the threats towards the prior plaintiffs and
attorneys were not directed towards the children in that present case. The magistrate
determined the internet comments were not threats but were simply just the
commentators' frustrations. Likewise, because plaintiffs stated that they were "fearful
of *public* harassment and retaliation, as reflected in *public* threats and other vitriol, *not*
with possible retaliation and ostracism at KS if and when they are admitted," their
evidence "at most… suggests they may be socially ostracized." *Id.* at 1040-41. The
magistrate recognized that many times people say things anonymously on the internet
that they would never say in another context and have no intention of carrying out.
The *<u>evidence</u>* did not show that plaintiffs' fears were reasonable. The Ninth Circuit
affirmed.

## IV.     THE THREE SITUATIONS IN *ADVANCED TEXTILE* (ONE NOT RELEVANT).

Plaintiffs here concede that the third situation in *Advanced Textile* (regarding
risking criminal prosecution) does not apply in this case. Plaintiffs argue that the first
two situations (regarding retaliation and privacy) apply. Since the plaintiffs argue they
will face retaliation from the threat actor (the first situation), courts apply the five-
factor balancing test. *Kamehameha Schs.*, 596 F.3d at 1042. Since plaintiffs also seek
to proceed anonymously because of privacy (the second situation), courts consider the
condensed three-step analysis. *Doe v. United Airlines, Inc.*, No. 2:17-cv-2825-RFB-
NJK, 2018 U.S. Dist. LEXIS 141573, at *2-3 (D. Nev. Aug. 21, 2018).

## V.     THE FIRST SITUATION: THE RISK OF RETALIATORY HARM IS SPECULATIVE.

### A.     Factors One and Two: Severity of the Threatened Harm and Reasonableness of Fear

Plaintiffs offer no evidence and only speculation that they will be retaliated by
the threat actors if their names end up on the public docket. There is not a shred of
evidence provided beyond ipse dixit. There is no evidence in the attorney's
declaration. ECF No. 70-2. Plaintiffs speculate in their motion that "if the hackers

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

knew the identity of the named plaintiffs in this suit, the hackers <u>*could*</u> retaliate

against them." Mot. at 3:8-9, ECF No. 70-1. They further speculate that:

> (1) "Requiring Plaintiffs or putative class members whose patient files are available for viewing online to publicly disclose their names <u>*could*</u> draw further attention to the fact that their information is available for viewing online, including by individuals who seek to misuse the information."

> (2) "Requiring Plaintiffs or putative class members whose patient files are not yet available for viewing online to publicly disclose their names <u>*could*</u> make them further targets for the hackers, encouraging the hackers to post their nude photos and videos online among other personal identifying information." [Mot. at 3:1-8, ECF No. 70-1.]

Plaintiffs' argument consists of a series of "could" statements that is not backed by evidence. Of course, no one knows what the threat actors will do, which is why plaintiffs speculate. We do know that in one of the consolidated cases, *Tuulik et al. v. Schwartz et al.*, 3:25-cv-00576 (originally venued in the S.D. Cal.), three plaintiffs put their names on the caption in March 2025. Plaintiffs have provided no evidence that these three plaintiffs were retaliated against.

<u>*When a plaintiff faces speculative harm or economic harm rather than physical harm, the harm must be "extraordinary" to justify granting anonymity*</u>. *Advanced Textile*, 214 F.3d at 1070-71. The Ninth Circuit distinguished "typical" fears of termination and blacklisting, which many plaintiffs face, from the "extraordinary" harm required to justify granting anonymity. *Id.* Critically, in *Advanced Textile*, the workers' fears were reasonable based on the <u>*workers' declarations and evidence*</u> repeating the threats of their employers and based on knowledge that they knew other people who had been imprisoned for failure to pay debts. *Id.* at 1065.

Plaintiffs argue that they fear retaliation from the third-party threat actors as a result if their identities are to be disclosed. Mot. at 3:1-8, ECF No. 70-1. Their fears in this context are unreasonable. "Courts are instructed to examine a party's fears through a critical lens." *Doe v. Amazon.com, Inc.*, 2011 WL 13073281, at *3 (W.D. Wash. Dec. 23, 2011). In *Kamehameha Schools* the plaintiffs' fears regarding online

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

1   threats from the community at large was deemed unreasonable <u>even though the U.S.</u>

2   <u>Attorney in Hawaii took the threats so seriously he issued a warning that threats based</u>

3   <u>on race are a federal felony</u>. 596 F.3d at 1045.

4         This case is different. Like the defendants, plaintiffs are unfortunate victims of

5   a cyberattack from third-party threat actors. Plaintiffs are alleging harm from their

6   communities if knowledge of their medical conditions is disclosed. The alleged harm

7   from the community – embarrassment and ridicule – are in magnitudes less than the

8   threats from the community in *Kamehameha Schools*. But even so, as the

9   reasonableness of Plaintiffs' fears are to be "consider[ed] [in] the surrounding context

10  and other listeners' reactions to the threats," it is hard to imagine anything other than

11  sympathy coming from Plaintiffs' communities. *Kamehameha Schs.*, 596 F.3d at

12  1044. Fear of harm from their communities is unreasonable.

13        In *Brnovich v. Biden*, a federal worker litigating a medical exemption to a

14  vaccine mandate filed a motion to proceed pseudonymously, citing disclosure of his

15  identity risks consequences to his future ability to work for the government. 2021 WL

16  7630109, at *1 (D. Ariz. Dec. 15, 2021). The threatened injury was that plaintiff was

17  subject to retaliatory workplace discipline and termination. In *Doe v. Amazon.com,*

18  *Inc.*, the plaintiff sued Amazon because it displayed her real age on her IMDB page.

19  As a result, the plaintiff alleged harm that display of her real age was causing her to

20  lose possible roles. The plaintiff feared retaliation and additional harm to her IMDB

21  page if she filed suit against Amazon. *Doe v. Amazon.com, Inc.*, 2011 WL 13073281,

22  at *1.

23        In both cases, courts found the plaintiff's fears to be unreasonable. In *Brnovich*,

24  "the threatened injury is not dependent on John Doe's status as a Plaintiff in this case

25  – even if the Court were to grant Plaintiff's motion, he still faces the threat of

26  workplace discipline and termination, simply as the result of his noncompliance with

27  the vaccine mandate." 2021 WL 7630109, at *2. In *Doe v. Amazon, Inc.*, "Plaintiff

28  alleges this harm is occurring even without public disclosure of her identity. This

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

harm, even if real, is not dependent on whether Plaintiff's identity is revealed to the public, and does not affect the Court's analysis on the issue of whether Plaintiff should be able to proceed anonymously." 2011 WL 13073281, at *4. The same logic applies here.

In short, Plaintiffs have not provided evidence that there is a high likelihood of severe and concrete retaliatory harm. Instead, they speculate what threat actors living in some other country might do. "Plaintiffs have not met their burden to show that their fear of being sued reasonably rises to the unusual level required to justify shielding their identity. There are no factors here, like in *Advanced Textile*, such as a high risk of arrest or imprisonment, elevating the Judy Does' fears to the level of an 'extraordinary' fear." *Doe No. 1 v. Wynn Resorts Ltd.*, 2022 WL 3214651, at *6 (D. Nev. Aug. 9, 2022). Plaintiffs ignore the presumption that plaintiffs should proceed under their real names, as highlighted by FRCP 10, reflecting the openness of public courts. The plaintiffs' fears of retaliation from the threat actor are not "extraordinary" but are examples of the "typical" fears described by *Advanced Textile*. Plaintiffs have not met their burden of showing both (1) that they have a fear of severe harm, and (2) that their fear of severe harm is reasonable. *Kamehameha Schs.*, 596 F.3d at 1042.

**B.    Factor Three: Minimal Vulnerability to Retaliation.**

Regarding vulnerability to retaliation, *Advanced Textile* found that the workers were very vulnerable to retaliation because their employment contracts prevented them from seeking any other work on Saipan. 214 F.3d at 1065. Unlike the *Advanced Textile* plaintiffs, the Jane Doe plaintiffs have not been threatened with any type of retaliation from any of the threat actors. Unlike the defendants in *Advanced Textile*, the plaintiffs here do not allege that Dr. Schwartz or any defendants have or ever would retaliate against them (they are medical professionals and would not). In short, "Plaintiffs have not met their burden to show that they are vulnerable to retaliation." *Wynn Resorts*, 2022 WL 3214651, at *7.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

**C.      Factors Four and Five: Significant Prejudice to the Opposing Party
and the Public's Interest.**

Allowing plaintiffs to proceed anonymously would prejudice defendants by
complicating discovery and trial proceedings. The use of pseudonyms in large, fact-
heavy cases can hinder discovery, confuse juries, and impact witness credibility. As
the case progresses, the Court would inevitably require Plaintiffs to proceed under
their real names, as seen in *Doe v. Elson S. Floyd College of Medicine*, 2021 WL
4197366, at *3 (E.D. Wash. Mar. 24, 2021). In *Elson S*, the court noted the risk of
prejudice to defendants from expert witnesses confusing pseudonym identifiers at
trial. As this case progresses, the Court would inevitably require plaintiffs to proceed
under their real names. *Id.*, 2021 WL 4197366, at *3 (court permitted pseudonyms
only through early stages of litigation, noting the issue may be revisited at each step).
Anonymity would only serve to delay and complicate the litigation process.

Regarding the fifth factor, "[f]ederal courts are courts of public record, and the
strong presumption is that the public has a right to know who is seeking what in court
and whether he or she is entitled to the relief sought." *Wynn Resorts*, 2022 WL
3214651, at *8. Here, there is already public interest in this litigation. There are
multiple news articles about this case from the Los Angeles Times and elsewhere
reporting that hackers are trying to extort American surgery practices. Grimaldi Decl.,
Exs. 4, 5; *see id.* Ex. (Plaintiffs' counsel's online advertising article about the breach
seeking plaintiffs). "The presumption can be overcome in unusual cases where
anonymity is critical. This is not such an unusual case. The public interest factor
weighs against allowing the plaintiffs to proceed anonymously." *Wynn Resorts Ltd.*,
2022 WL 3214651, at *8. The balance between privacy and transparency is best
achieved by proceeding under real names, supported by the existing protective
measures such as the protective order the Court signed. ECF No. 67.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

**VI.    THE SECOND SITUATION: PRESERVATION OF PRIVACY IN A MATTER OF SENSITIVE AND HIGHLY PERSONAL NATURE DOES NOT RISE TO THE LEVEL REQUIRING PSEUDONYMS.**

Defendants have already analyzed the severity of harm from the perspective of retaliation and shown that the risk of retaliation is speculative. Now we consider the condensed analysis, regarding the severity of any likely harm, the party's interest in anonymity, and prejudice (to the defendants and the public interest) in the context of this second situation.

Again, there is no direct evidence showing the severity of likely harm that the plaintiffs will suffer if their names end up on the complaint (the *Tuulik* plaintiffs have yet to suffer harm). In a declaration, plaintiffs' counsel states:

> I have spoken with and interviewed many of the named Plaintiffs in the lead action. As a result of these discussions, I am confident that many of the named Plaintiffs would decline to proceed with this case if they are required to disclose their names in the public record. Plaintiffs have expressed severe embarrassment and humiliation about the data leak and the possibility of exposure of their lipedema, other medical conditions, and their private images. They have also consistently expressed significant fear about their information being public and/or becoming public. [ECF No. 70-2, ¶ 7.]

This is the only "evidence," and it is hearsay. Fed. R. Evid. 801(c) (" 'Hearsay' means a statement that:(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). The proposed plaintiffs did not offer their own declarations or provide any explanation of why they are seeking to hide their names.

In addition, Plaintiffs' counsel does not present any evidence that the proposed "Jane Does" are currently on the threat actor's website. Plaintiffs have made it difficult for Defendants and the Court to analyze their position. It is not clear if all the plaintiffs or only some of them have lipedema or what condition they have.

Lipedema does not meet the high threshold required for anonymity. It is a common disease that affects nearly 11% of women worldwide. Grimaldi Decl., Ex. 2

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

13

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

1    at 1 ("Lipedema: A Relatively Common Disease with Extremely Common

2    Misconceptions"). In the United States alone, the estimated incidence is 1 in 9 adult

3    women. *Id.* An article from the British Journal of Pharmaceutical Research estimates

4    the worldwide prevalence of lipedema could be as high as 39%. Grimaldi Decl., Ex. 3

5    at 2. This is a condition commonly confused with and misdiagnosed as obesity.

6    Grimaldi Decl., Exs. 2, 3. As this condition is already hiding in plain sight, it is hard

7    to imagine how this disease can be so stigmatized as to require anonymity. Lipedema

8    is not a stigmatized disease compared to HIV/AIDS. *John F. Kennedy Univ.*, 2013

9    WL 4565061, at *3 (common and unstigmatized diseases like ADHD insufficient to

10    be declared extraordinary and meriting anonymity).

11        As plaintiffs admit, not all the patients on the website have lipedema. ECF No.

12    70-2, ¶ 7. Some have non-stigmatized conditions or had cosmetic surgery. *See*

13    Schwartz Decl., ¶ 3 (explaining that his practice includes non-lipedema surgical

14    procedures).

15        This appears to be a plaintiff-selection issue. Counsel is concerned that "*many*

16    *of the named Plaintiffs would decline to proceed with this case if they are required to*

17    *disclose their names*." ECF No. 70-2, ¶ 7. Counsel only needs one representative

18    plaintiff for a class action. There are at least three *Tuulik* plaintiffs that are already

19    willing to put their names on a caption. And if counsel is considering the *Tuulik*

20    plaintiffs, those plaintiffs' anonymity is already destroyed. *Doe v. United States*

21    *Department of Health and Human Services*, 2012 WL 12964650 (D. Ariz. Aug. 23,

22    2012) (denying anonymity where plaintiff's identity had already been disclosed).

23        *Plaintiffs rely on a series of cases with facts dissimilar to those in this case that*

24    *do not help them justify the use of a pseudonym.* ECF No. 70-1, at 6:19-28, 7:19-24.

25    The existence of medical conditions alone is not enough to justify proceeding

26    anonymously. "The most compelling situations involve matters which are highly

27    sensitive, such as social stigmatization, real danger of physical harm, or where the

28    injury litigated against would occur as a result of the disclosure of the plaintiff's

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

1   identity. *That the plaintiff may suffer some embarrassment or economic harm is not*
2   *enough.*" *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981). Plaintiffs have not
3   shown that they are in danger here, nor have they proven that their conditions are
4   socially stigmatized.

5        *First*, plaintiffs rely on cases where the plaintiff has sued for discrimination
6   based on long-stigmatized *mental conditions and diseases* to justify the use of a
7   pseudonym. For instance, the court only allowed the use of a pseudonym in *Doe v.*
8   *City & Cnty. of San Francisco*, 2017 U.S. Dist. LEXIS 64291, at *6-7 (N.D. Cal.
9   2017), where the plaintiff brought a discrimination claim based on their HIV-positive
10  status. There was a similar holding in *Doe v. Sessions*, 2018 WL 4637014, at *1
11  (D.D.C. 2018), where the plaintiff sued their employer for discrimination based on the
12  plaintiff having *mental conditions*.

13       *Second*, plaintiffs relied on cases involving nudity to justify proceeding
14  anonymously. These cases are so factually different from this case that they could not
15  possibly justify the use of a pseudonym here. In *Plaintiff B v. Francis*, 631 F.3d 1310,
16  1312 (11th Cir. 2011), the plaintiffs were *girls under the age of eighteen* who had
17  participated in the infamous "Girls Gone Wild" franchise when the acts alleged in the
18  complaint took place. The court explained that the lower court erred by not giving
19  enough consideration to the harm that could be caused by not allowing the plaintiffs
20  to proceed with anonymity. *Id.* at 1317-18. Plaintiffs who engaged in *videotaped*
21  sexual conduct *while underaged* were granted anonymity due to the sensitive nature
22  of the content and risk of it following them permanently. *Id.* at 1318. Similarly, in
23  *Jane Roes 1-2 v. SFBSC Management, LLC*, 77 F. Supp. 3d 990, 992 (N.D. Cal.
24  2015), the plaintiffs were exotic dancers who contended that they needed to proceed
25  anonymously for safety reasons, as is the custom for exotic dancers.

26       Finally, Plaintiffs cite *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) and *Roe v.*
27  *Catholic Health Initiatives Colo.*, 2012 U.S. Dist. LEXIS 713, at *1 (D. Colo. 2012).
28  *James* is a case where the plaintiffs commenced their action after learning that the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *doctor who performed their artificial insemination was likely the true father of their*

2  *children* and the court vacated the lower court's order to proceed without anonymity.

3  6 F.3d 233, 235, 242. In *Roe v. Catholic Health Initiatives Colo.*, the plaintiff argued

4  that the defendant *unlawfully* gathered medical information and *unlawfully* disclosed

5  it. 2012 U.S. Dist. LEXIS 713, at *9. There, the court was primarily concerned with

6  the fact that if the plaintiff were "forced to litigate her privacy claims under her own

7  name, she would be required to publicly disclose the confidential medical information

8  allegedly unlawfully gathered by the defendant." *Id.* at *12. Here, defendants were

9  also the victims of third-party hacking. The doctors lawfully obtained plaintiffs'

10  medical information and were not the ones to disclose it. Grimaldi Decl., Ex. 6.

11  **VII.   THE AVAILABILITY OF OTHER PROTECTIVE MEASURES AND PROTECTIVE ORDER NEGATES THE NEED FOR PSEUDONYMS.**

12

13        A protective order has been entered. ECF No. 67. The parties can file under

14  seal any documents containing sensitive personal information, providing Plaintiffs

15  with privacy protections. Courts have previously denied the use of pseudonyms where

16  protective orders were deemed sufficient. *John F. Kennedy Univ.*, 2013 WL 4565062,

17  at *3-5 (denying the use of pseudonyms where a protective order was in place, despite

18  plaintiff's fears of "social and professional stigmatization,… discrimination and

19  retaliation"). Plaintiffs have not demonstrated why the existing protective measures

20  are inadequate.

21        Plaintiffs' lipedema condition is not central to this case and is wholly within the

22  safe harbors of the protective order. This matter can be litigated without disclosing

23  plaintiffs' sensitive personal and medical information. This case at heart is a data-

24  security case, not a case involving medical malpractice. In *Doe v. Chevron*, 2025 WL

25  2260155 (N.D. Cal. Aug. 7, 2025), the plaintiff filed anonymously against his

26  employer for disability discrimination and retaliation. *Id.* at *1. The plaintiff there

27  sought to protect his identity from public disclosure to minimize the risk of exposing

28  his special-needs child's identity and medical diagnosis from becoming public. But

the "mere use of plaintiff's name throughout the course of this lawsuit prosecuting what he alleges was retaliation against him by Chevron will not disclose his minor child's sensitive medical information." *Id.* at 3.

As there, so here "to the extent that [Plaintiffs'] medical history or diagnosis details must be discussed, they may be redacted when appropriate, to preserve [Plaintiffs'] privacy… any discovery… will be safeguarded by a protective order." *Id.* The *Doe v. Chevron* ruling contains no mention of what the medical diagnosis actually is and is redacted in several places where sensitive information is likely to be. The same can be done here. Plaintiffs have not shown any additional need to impose more restrictions.

## VIII. PLAINTIFFS HAVE WAIVED THEIR RIGHT TO PRIVACY BECAUSE THEY HAVE HEAVILY FEATURED THEIR MEDICAL CONDITIONS IN THEIR COMPLAINTS.

Alternatively, plaintiffs have waived their right to privacy in this case by placing their medical condition at issue. Courts hold that mental conditions are in controversy when said condition is the subject of the litigation. *Much v. Gessesse*, 339 F.R.D. 625, 629–30 (C.D. Cal. 2018). "A mental condition is 'in controversy' when it is itself the subject of the litigation." *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013). In *Much v. Gessesse*, the court found that the plaintiff put his mental health at issue by alleging that police department defendants "did not have probable cause to believe that he was a danger to himself or others 'as a result of a mental health disorder.' Courts conclude that a plaintiff may waive the right to privacy and the psychotherapist-patient privilege by initiating litigation that turns on a determination of the plaintiff's mental condition." 39 F.R.D. 625 at 629. Similarly, plaintiffs have placed their medical condition — lipedema — at issue because their lipedema and other medical conditions are centrally featured in the complaints filed thus far. *See* First Amended Complaint, Case No. 2:25-CV-00898-GW-SSC, ECF No. 22, ¶¶ 118, 122, 133, 138, 145, 149, 153, 159, 163, 173, 178, 182, 187. Plaintiffs' medical conditions are not severable from this action. *John F. Kennedy Univ.*, 2013

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

162073714.32

17

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS

WL 4565061, at *4 ("Plaintiff need not provide details about her mental and physical health in order to adequately plead her case. Rather, such facts pertain to her damage allegations, which could have been stated in far more general terms than Plaintiff opted to use. Plaintiff's decision to set forth health-related details in her complaint was a matter of choice, not requirement."

## IX. CONCLUSION

Plaintiffs' allegations are not to be taken lightly, and nothing said here is meant to diminish them. Plaintiffs, however, have not met the high burden required by the law of this Circuit. Proceeding anonymously is the exception to the rule. *Advanced Textile*, 214 F.3d at 1067. Plaintiffs' allegations do not rise to "extraordinary" harm. *Id.* at 1070–71. The protective order and document-sealing offers a more appropriate balance between privacy and transparency. This Court should deny plaintiffs' request to proceed anonymously.

DATE:  September 12, 2025          LEWIS BRISBOIS BISGAARD & SMITH LLP


By:      */s/ Michael K. Grimaldi*
        MICHAEL K. GRIMALDI
        Attorneys for Defendants
        Jaime S. Schwartz, MD
        Jaime S. Schwartz, MD PC
        Karen Herbst, MD
        Karen Herbst, MD PC
        Total Lipedema Care

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Defendants, certifies that this brief

3  contains 6,003 words, which complies with the word limit of L.R. 11-6.1.

4

5  DATE:  September 12, 2025          LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                                    By:    _/s/ Michael K. Grimaldi_

9                                           MICHAEL K. GRIMALDI
                                            Attorneys for Defendants
10                                          Jaime S. Schwartz, MD
                                            Jaime S. Schwartz, MD PC
11                                          Karen Herbst, MD
                                            Karen Herbst, MD PC
12                                          Total Lipedema Care

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW