Raina C. Borrelli (*Pro Hac Vice*)
raina@straussborrelli.com
Carly M. Roman, SBN 349895
croman@straussborrelli.com
**STRAUSS BORELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100; Fax: (872) 263-1109

*Interim Co-Lead Class Counsel*
*Additional Counsel listed in signature block*

Damion D. D. Robinson, SBN 262573
David Markevitch, SBN 256163
Jimmie Davis Parker, SBN 252023
**ROBINSON MARKEVITCH & PARKER LLP**
8430 Santa Monica Blvd., Suite 200
West Hollywood, CA 90069 Tel: (213) 757-7778
dr@robinsonmarkevitch.com
dm@robinsonmarkevitch.com
jdp@robinsonmarkevitch.com

*Attorneys for Plaintiffs in Lead Action*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JAIME S. SCHWARTZ, MD, DATA SECURITY LITIGATION | Case No. 2:25-CV-00898-GW-SSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PROCEED USING PSEUDONYMS (ECF 70)**<br><br>Date:   October 6, 2025<br>Time:   8:30 A.M.<br>Crtrm.: 9D<br><br>The Hon. George H. Wu<br>Trial Date: Not Set |

# TABLE OF CONTENTS

I. PLAINTIFFS HAVE DEMONSTRATED SUFFICIENT GROUNDS TO PERMIT THEM TO PROCEED USING PSEUDONYMS. ................................2

   A. Plaintiffs' Fears are Objectively Reasonable. ..............................5

   B. Plaintiffs' Vulnerability to Retaliation........................................6

II. DEFENDANTS FAIL TO REBUT THAT THE FACTS OF THIS CASE ARE SENSITIVE OR HIGHLY PERSONAL................................................................7

III. DEFENDANTS FAIL TO DEMONSTRATE ANY ACTUAL PREJUDICE FROM PERMITTING USE OF PSEUDONYMS. ...............................................10

IV. THE PUBLIC INTEREST IN THIS CASE WILL NOT BE ADVERSELY IMPACTED BY PLAINTIFFS' USE OF PSEUDONYMS. ..................................11

V. THE PROTECTIVE ORDER GOVERNS DISCOVERY ONLY...................12

VI. NO WAIVER OF RIGHT TO PRIVACY .......................................................12

VII. CONCLUSION................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Doe v. City & Cnty. of San Francisco*,
2017 U.S. Dist. LEXIS 64291 (N.D. Cal. 2017) ............................................. 9, 10

*Doe v. Elson S. Floyd College of Medicine*,
2021 WL 4197366 (E.D. Wash. Mar. 21, 2021) ................................................... 11

*Doe v. John F Kennedy University*,
2013 WL 4565061 (N.D. Cal. Mar. 4, 2021) ......................................................... 12

*Doe v. Kamehameha Schools*,
596 F.3d 1036 (9th Cir. 2010) ................................................................................ 6

*Doe v. Sessions*,
2018 WL 4637014 (D.D.C. 2018) ..................................................................... 9, 10

*Does 1 through XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) ................................................ 2, 4, 5, 6, 8, 10, 11

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*,
77 F. Supp. 3d 990 (N.D. Cal. 2015) ................................................................. 9, 10

*Much v. Gessesse*,
339 F.R.D. 625 (C.D. Cal. 2018) ........................................................................... 12

*Plaintiff B v. Francis*,
631 F.3d 1310 (11th Cir. 2011) ............................................................................ 9, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' case is unique, warranting special protection of their true names by permitting their use of pseudonyms in filings and court proceedings. It is unique because, unlike other data breach cases, it involves the theft and periodic disclosure of highly sensitive, personal, medical information of Defendants' patients. This includes, among other things, photos of their semi-nude and/or nude bodies, as well as video footage of their surgeries displaying, for example, their buttocks, breasts, and/or stomachs. The cybercriminals have directly contacted some of Defendants' patients. They continue to periodically post patient files and images, and there is no reason to believe that they will stop until they get paid. Many patient files have already been posted to a public-facing website, with the credible and proven threat that more will be disclosed should the ransom demands remain unmet. For those Plaintiffs whose files have already been posted on the hacker site, entering the Plaintiffs' full name along with "Jaime Schwartz" into Google or other search engines returns a link to their complete patient file, including nude and semi-nude photos. Those whose patient files have not yet been posted to the site remain in reasonable fear that they will be the hackers' next target for extortion.

Plaintiffs demonstrate a reasonable, credible and objective concern of further harm if their true names are disclosed. By proceeding pseudonymously, Plaintiffs seek to protect themselves from additional invasions of their privacy and to guard against objectively reasonable threats, as detailed in their Motion. At the same time, they aim to pursue justice not only for themselves but also for a class of patients similarly harmed by Defendants' data breaches. Nevertheless, they will

confidentially disclose their names to Defendants and this Court.

Applicable law and facts warrant granting this Motion. Defendants misconstrue the law and facts and fail to demonstrate any actual prejudice from allowing Plaintiffs to use pseudonyms in public filings and proceedings, particularly at this stage, such as in the consolidated amended complaint. The Motion should be granted in full.

I. **PLAINTIFFS HAVE DEMONSTRATED SUFFICIENT GROUNDS TO PERMIT THEM TO PROCEED USING PSEUDONYMS.**

Plaintiffs' Motion was filed prior to filing a consolidated amended complaint, which will identify only five plaintiffs selected from more than 20 represented by the firms in the consolidated action. The current operative complaint in the lead action is the First Amended Class Action Complaint (ECF No. 22), which contains Plaintiffs' allegations regarding their experiences, the alleged privacy violations from the two data breaches of Defendants, as well as their intent to "sue under these pseudonyms pursuant to *Does 1 through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)" subject to a future motion to proceed "to protect their identities and the privacy of their medical information." ECF No. 22, ¶ 28.

Plaintiffs' Motion is supported by Mr. Robinson's Declaration attesting to information known about *two* data breaches impacting Defendants; the online availability of highly private patient files, including personal identifying information, insurance, medical information, photos and videos; discussions with affected persons; and documentary evidence supporting Plaintiffs' Motion attached as exhibits. *See* Decl. of Damion Robinson, ECF 70-2. Specifically, Mr. Robinson

provides evidence of a publicly available website maintained by cybercriminals that is periodically updated to add more patient files, as the hackers' demands remain unmet. *Id*., ¶ 5, Ex. 2. The hackers' threat to continue releasing patient data is explicit on the website: "We will continue to publish sensitive patient data here until the clinic contacts us and initiates negotiations." Ex. 2. The threat was executed by the cybercriminals as of January 5, 2025: "As Dr. Schwartz's clinic continues to ignore the data hack, we have added 10 new clients. Another 10 clients were added to the website and has [sic] been notified about this." *Id.* Indeed, the cybercriminals have continued to release batches of patient files while this case has been pending.

In other words, the cybercriminals are continuing to post files and make direct outreach to affected patients while the ransom demand is unmet. The cybercriminals want money. Nothing stops them from seeking payment from the patients to remove their files, particularly from those who advance this litigation, as time goes on and Defendants refuse to pay. "Attacks on plastic surgery offices are not new in 2023, but threat actors have become more aggressive in revealing sensitive information of patients in 2023 and attempting to extort patients directly." *Id.,* Ex. 1, p. 2.

This demonstrates an objectively reasonable concern of the threat of retaliation by the cybercriminals against Plaintiffs who participate in this lawsuit, including those whose files are on the site and those whose files have yet to be uploaded. Mr. Robinson also attests to a reasonable concern about requiring Plaintiffs to disclose their identities, given their severe embarrassment and humiliation from the privacy breaches of their patient files maintained by Defendants, and fears regarding their information being made public, which

confirms the highly sensitive and private nature of the case. *Id.,* ¶ 7. As to those Plaintiffs whose names and information are on the hacker website, public disclosure of their identities in this case will announce to the public, including friends and family members who may be unaware of the hacker site, that Plaintiffs' nude and semi-nude images are readily available online. This is further supported by the allegations in the operative complaint in the lead action.[1]

Contrary to Defendants' assertion, at this early stage, Plaintiffs are not *required* to submit plaintiff declarations as evidence to support this Motion, but if desired by this Court, they will submit declarations for the Court's *in camera* review. The consolidated amended complaint selecting representative Plaintiffs has yet to be filed. The procedural posture of *Advanced Textile Corp.,* 214 F.3d 1058, was different, in that the Ninth Circuit was asked to decide whether the named plaintiffs and other workers in that FLSA case could use pseudonyms after a district court granted defendants' motion to dismiss with leave to amend the complaint to state their true names and denied the plaintiffs' cross-motion to proceed using pseudonyms. *Id.* at 1062-1063. The operative complaint in that case was filed with pseudonyms and alleged harm if factory workers were required to disclose their true names. On the cross-motions, the parties elected to submit evidence regarding the

---

[1] Ironically, Defendants claim that that Mr. Robinson's Declaration is inadmissible "hearsay" while at the same time submitting a declaration of their own in support of their position. ECF. 73 at 13:17-21; Grimaldi Decl., Ex. 1. Mr. Robinson's Declaration serves as evidence of counsel's interviews with the Plaintiffs in the lead action and reflects both the Plaintiffs' and counsel's then-existing mental and emotional states. It supports the decision to file the consolidated class action complaint using pseudonyms and falls within the hearsay exception under Federal Rule of Evidence 803(3).

alleged harm in the form of garment worker declarations. But the Ninth Circuit did not hold that plaintiff declarations were essential for granting relief. Rather, the Court held that concerns of retaliation must be *objectively* reasonable (*id.* at 1063), which would not necessarily be satisfied by a declaration of a plaintiffs' *subjective* concerns.

As outlined in Plaintiffs' Motion, all factors for the requested order are met, particularly where Defendants have failed to identify any actual prejudice. The cases cited by Defendants primarily involve threats of retaliation by defendants (such as by employers), where retaliation is clearly understood from the fact pattern. Defendants fail to cite an analogous case where the threats are from third party criminals who have already acted on those threats, as here.

### A.     Plaintiffs' Fears are Objectively Reasonable.

"[P]laintiffs are not required to prove that the defendants intend to carry out the threatened retaliation. What is relevant is that plaintiffs were threatened, and that a reasonable person would believe that the threat might actually be carried out." *Advanced Textile,* 214 F.3d at 1071. Here, Plaintiffs provided proof of a publicly available website maintained by cybercriminals with Defendants' patient files, which is periodically updated to add more files as Defendants refuse to comply with the cybercriminals' demands. The concern that Plaintiffs' data will be posted is not speculative. The hackers have already posted almost 80 files, and their postings have continued during this lawsuit. Plaintiffs have legitimate, objective concerns that participation in this lawsuit could result in retaliation.

None of the cases cited by Defendants involve confidential medical

information that includes nude or semi-nude photos and videos, particularly focused on private parts, that were stolen by cybercriminals and posted online to secure ransom. Defendants' citation to *Doe v. Kamehameha Schools,* 596 F.3d 1036 (9th Cir. 2010) is inapposite. *See* Opposition, ECF No. 73 at 7:4-8:12. There, the plaintiffs had not demonstrated that the community had ever acted on its vague threats of harm. Here, the cybercriminals are acting on their threats to continue to post highly private medical files and images of patients as ransom demands are not met. Robinson Decl., Ex. 2. It is also objectively reasonable to fear the exposure and misuse of a Plaintiff's personal, medical data and images available online by other third parties.

### B. Plaintiffs' Vulnerability to Retaliation

While Defendants attempt to compare the Plaintiffs in this case to the workers in *Advanced Textile*, 214 F.3d 1058, to claim that Plaintiffs are not vulnerable to retaliation, the evidence demonstrates otherwise. The patient files that were accessed by cybercriminals through Defendants' compromised systems contain highly sensitive information about Plaintiffs, such as names, addresses, email addresses, and other personal identifiers, that would enable these criminals to retaliate against Plaintiffs for participating in this lawsuit. This information would facilitate ransom demands directed at Plaintiffs if the cybercriminals fail to receive payment. Robinson Decl., ¶ 6. Some affected patients have already been contacted directly by email or phone, including after midnight. ECF 70 at 8:28-9:1.

## II. DEFENDANTS FAIL TO REBUT THAT THE FACTS OF THIS CASE ARE SENSITIVE OR HIGHLY PERSONAL.

This case involves the theft and online dissemination of highly private and sensitive personal medical information. By arguing that lipedema is common (ECF 73 at 1:27-28), Defendants miss the point. They ignore that this condition often results in severe stigma because it is misunderstood as obesity or cellulite. Worse, Defendants ignore the fact that there are nude and semi-nude photos and videos of patients available for public viewing, together with other identifying information such as names and faces. This is in contrast to Defendants' own website, where "before and after" images of patients' conditions are anonymized, omitting patient names or faces.[2] Defendants avoid showing patient faces on their website. By contrast, the hacker website exposes far more sensitive material, including patients' driver's licenses alongside their private images. Without question, this case involves highly sensitive and personal information, warranting Plaintiffs' use of pseudonyms. Defendants' display of anonymized images on their website concedes this fact.

For this reason, the vast majority of Plaintiffs in the related actions have proceeded under pseudonyms. For instance, in the lead action, 16 Plaintiffs elected to file suit using pseudonyms. ECF 22. In contrast, the Plaintiffs in the *Tuulik* action elected not to do so, and will continue using their true names in the litigation. The fact that the *Tuulik* Plaintiffs elected to proceed using true names does not diminish the seriousness of Plaintiffs' privacy concerns or their reasonable fear of retaliation.

---

[2] *See* Lipedema Signature Procedures Pictures: https://www.drjaimeschwartz.com/before-after-photos/body/lipedema/ (last accessed September 15, 2025).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PROCEED USING PSEUDONYMS (ECF) 70 (Case No. 2:25-cv-00898) - 7

In response to a similar argument, the Ninth Circuit recognized that "[p]ast acts of bravery in the face of danger is poor rationale for denying the courageous individual protection against future harm." *Advanced Textile*, 214 F.3d 1069, n. 11. Whether the *Tuulik* Plaintiffs will face retaliation or other harm from third parties remains to be seen. However, their decision should not compel Interim Co-Lead Class Counsel to select them over other qualified individuals as proposed class representatives, as Plaintiffs have a reasonable basis for seeking the protection of anonymity.

Additionally, while Defendants claim that Plaintiffs have not identified whether their files are currently on the hacker site (ECF 73 at 13:22-26), the Plaintiffs selected for the consolidated complaint include both individuals whose patient files and nude or semi-nude photographs are currently exposed online, as well as patients whose files have not yet been published. Whether the medical content posted on the hacker site involves nude and/or semi-nude images of patients suffering from lipedema or nude and/or semi-nude images of patients who selected an optional cosmetic surgery such as breast reconstruction does not alter the analysis.

Defendants attempt to distinguish the facts of this case from other cases involving sensitive personal information or images where courts have permitted pseudonym use (ECF 73 at 15:5-16:10), but the cases cited by Defendants involve far less sensitive and stigmatizing information. Plaintiffs here should be granted the right to proceed anonymously for the same fundamental reasons that support anonymity for plaintiffs suffering from conditions such as HIV or mental illness—to protect against highly personal, stigmatizing, and potentially harmful disclosures that are irrelevant to the merits of the case and which serve only to expose the

1  plaintiff to public scrutiny, shame, or retaliation. ECF 73 at 15:5-12, discussing *Doe*
2  *v. City & Cnty. of San Francisco*, 2017 U.S. Dist. LEXIS 64291, at *6-7 (N.D. Cal.
3  2017) and *Doe v. Sessions*, 2018 WL 4637014, at *1 (D.D.C. 2018).

4        Likewise, in *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011), the
5  Eleventh Circuit considered multiple factors in allowing the plaintiffs to proceed
6  under pseudonyms, including the fact that plaintiffs were minors at the time they
7  were videotaped nude. *Id.* at 1317. However, this factor alone was not dispositive.
8  The court also emphasized the lasting harm from public exposure, noting that
9  "[a]nyone entering the Plaintiffs' names into an online search engine will find
10 several links containing articles discussing their appearance in the videos." *Id.* at
11 1318. So too here, anyone entering the Plaintiffs' full name along with "Jaime
12 Schwartz" into a search engine can access a link to their patient file, including nude
13 and semi-nude photos, for those Plaintiffs whose files have already been posted.
14 Indeed, the hacker website can be located in some instances, simply by searching
15 the names of affected patients.

16       And just as the plaintiffs in *Jane Roes 1-2 v. SFBSC Mgmt., LLC,* 77 F. Supp.
17 3d 990 (N.D. Cal. 2015), who were exotic dancers, "express[ed] a legitimate concern
18 for their privacy and, more compelling for the anonymity analysis, an
19 understandable fear of social stigmatization" (*id.* at 993), so too here, most of the
20 Plaintiffs suffer from lipedema, a condition which often results in severe stigma
21 because it is misunderstood as obesity or cellulite. Additional stigmatization arises
22 from the fact that employers, colleagues, educators, family members, and peers
23 could also view the photos online. A medical photo used for Defendants' clinical
24

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PROCEED USING PSEUDONYMS
(ECF) 70 (Case No. 2:25-cv-00898) - 9

purposes may be viewed online as salacious or inappropriate when stripped of its medical context.

Although no case is precisely analogous to Plaintiffs', the privacy interests recognized in *San Francisco, Sessions, Francis, SFBSC Mgmt., Jacobsen,* and *Catholic Health Initiatives Colo.,* are no less compelling than those at stake here. Like the present case, each of those cases involved deeply personal matters implicating bodily autonomy, dignity, and identity. In each case, public disclosure risks subjecting plaintiffs to shame, stigma, reputational harm, or retaliation. And in each case, including here, the plaintiff's willingness to pursue justice may be chilled or deterred entirely if forced to disclose their identity in a public court record. As the Northern District of California aptly stated in *SFBSC Mgmt., LLC,* 77 F. Supp. 3d at 995:

> The court does not mean to equate the various specific topics that these cases subtend. A broad brush will do: For purposes of the anonymity discussion, it is enough to observe that courts have regularly responded to the especially sensitive nature of this area and have been willing to grant parties anonymity. The same judicial instinct should apply here.

### III. DEFENDANTS FAIL TO DEMONSTRATE ANY ACTUAL PREJUDICE FROM PERMITTING USE OF PSEUDONYMS.

Defendants purported prejudice does not outweigh Plaintiffs' need for anonymity. Defendants vaguely complain, without support, that pseudonyms could hinder discovery and confuse juries. ECF 73 at 12:1-13. This is insufficient. The Court must "determine the precise prejudice at each stage of the proceedings to the opposing party." *Advanced Textile*, 214 F.3d 1068. Here, anonymity will not impede discovery. The parties have already agreed to a protective order under which

discovery may be shared confidentially, and Plaintiffs will disclose their names to Defendants and this Court, just like the plaintiff in *Doe v. Elson S. Floyd College of Medicine,* 2021 WL 4197366, at *3 (E.D. Wash. Mar. 21, 2021). Defendants reliance on *Elson,* is misplaced, as there, the district court permitted the plaintiff to use a pseudonym pre-trial, with the ability to revisit the issue and potentially require use of a first name and last initial or other mitigation methods at trial. *Id.* at *3-4. If the Court needs to revisit pseudonym use for trial, the parties can address the issue later.

### IV. THE PUBLIC INTEREST IN THIS CASE WILL NOT BE ADVERSELY IMPACTED BY PLAINTIFFS' USE OF PSEUDONYMS.

Defendants do not explain how allowing Plaintiffs to proceed under pseudonyms would hinder public access to the significant issues in this case. The public will understand that patients of Defendants are seeking relief after two data breaches that have resulted in the theft of their patient files and disclosure of personal identifying information and medical information, including semi-nude and nude photos and videos, on a public website. "The public also has an interest in seeing his case decided on the merits" and many of the named Plaintiffs would decline to proceed if required to disclose their names in the public record. *Advanced Textile*, 214 F.3d 1073; Robinson Decl. ¶7. Therefore, "permitting plaintiffs to use pseudonyms will serve the public's interest in this lawsuit by enabling it to go forward" and allowing class counsel to select the most viable class representatives, rather than only those who are willing to forgo anonymity. *Advanced Textile*, 214 F.3d 1073.

## V. THE PROTECTIVE ORDER GOVERNS DISCOVERY ONLY.

While the protective order is useful for managing discovery, it does not address the concerns presented here. Defendants fail to explain how that order addresses the relief sought herein, namely, allowing Plaintiffs to proceed under pseudonyms in court filings and proceedings. Plaintiffs do not seek to protect their medical information from disclosure by Defendants. That disclosure has already occurred. The data is in the hands of hackers and/or posted online. Plaintiffs seek to protect their identities. The case cited by Defendant, *Doe v. John F Kennedy University,* 2013 WL 4565061 (N.D. Cal. Mar. 4, 2021) actually shows that a protective order is not sufficient where there is no guarantee that private medical or health information would be sealed, only that requests for partial sealing would be considered. *Id.* at *5.

## VI. NO WAIVER OF RIGHT TO PRIVACY

Defendants incorrectly claim that Plaintiffs have somehow waived their right to privacy by putting their medical conditions into the complaints. ECF 73 at 17:12-15. But elsewhere Defendants correctly state: "Plaintiffs' lipedema condition is not central to this case" and confirms the case is "at heart … a data security case, not a case involving medical malpractice." *Id.* at 16:20-23.

This case involves Defendants' repeated cybersecurity failures, which exposed Plaintiffs to serious harm. Unlike a medical malpractice involving botched lipedema surgeries where the medical condition itself is at issue, Plaintiffs here are not placing their medical conditions at the center of their claims. Thus, this case is distinguishable from *Much v. Gessesse,* 339 F.R.D. 625, 629-30 (C.D. Cal. 2018),

where the plaintiff's condition was essential to his civil claims. Nevertheless, Plaintiffs must sufficiently allege their experiences. This includes how semi-nude or nude photos and videos taken during lipedema consults and treatments—which tends to occur in private areas of the body where fat deposits such as the buttocks—became part of their patient files. Plaintiffs must also sufficiently describe their harm and damages, which necessitates some discussion of medical services provided and the resulting exposure of the sensitive data. By pleading relevant facts, Plaintiffs did not place "their medical condition at issue" (ECF 73 at 17:12-15) or waive their privacy rights.

## VII. CONCLUSION

For these reasons, Plaintiffs respectfully request that their motion be granted in its entirety, as all relevant factors support the use of pseudonyms in this unique case involving serious and highly sensitive privacy violations. To the extent the Court requires more detailed information about the individual plaintiffs, Plaintiffs are willing to submit their declarations *in camera*.

Dated: September 19, 2025　　　　　　　STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*
　　Raina C. Borrelli (*Pro Hac Vice*)
　　raina@straussborrelli.com
　　Carly M. Roman (SBN 349895)
　　croman@straussborrelli.com
　　**STRAUSS BORRELLI PLLC**
　　980 N. Michigan Avenue, Suite 1610
　　Chicago, IL 60611
　　Telephone: (872) 263-1100
　　Facsimile: (872) 263-1109

*Interim Co-Lead Counsel*

Dated: September 19, 2025        BOUCHER LLP

By: */s/ Shehnaz M. Bhujwala*
      Shehnaz M. Bhujwala, SBN 223484
      bhujwala@boucher.la
      Raymond P. Boucher, SBN 115364
      ray@boucher.la
      **BOUCHER LLP**
      21600 Oxnard Street, Suite 600
      Woodland Hills, CA 91367-4903
      Telephone: (818) 340-5400
      Facsimile: (818) 340-5401

*Interim Co-Lead Counsel*

## ATTESTATION

The undersigned, interim co-lead counsel of record for Plaintiffs, attests that pursuant to Local Rule 5-4.3.4(a)(2)(i) all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: September 19, 2025         By:   */s/ Raina C. Borrelli*
                                        Raina C. Borrelli

## CERTIFICATE OF COMPLIANCE

The undersigned, interim co-lead counsel of record for Plaintiffs, certifies that this brief contains 3,430 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 19, 2025         By:   */s/ Raina C. Borrelli*
                                        Raina C. Borrelli

# CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on September 19, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, via the ECF system.

DATED this 19th day of September, 2025.

        STRAUSS BORRELLI PLLC

        By: */s/ Raina C. Borrelli*
            Raina C. Borrelli
            STRAUSS BORRELLI PLLC
            One Magnificent Mile
            980 N. Michigan Ave., Suite 1610
            Chicago, IL 60611
            Telephone: (872) 263-1100
            Facsimile: (872) 263-1109
            raina@straussborrelli.com